478 So.2d 918 (1985)
Otis MATT and Mary Esther Matt
v.
Bill COX, et al.
No. 84-CA-0630.
Court of Appeal of Louisiana, First Circuit.
September 26, 1985.
Dissenting Opinion October 2, 1985.
Writ Denied November 22, 1985.
*919 David B. AllenSamanie & Barnes, Houma, for plaintiffs and appellants Otis Matt and Mary Esther Matt.
Christopher Riviere, Thibodaux, for defendants and appellees Bill, Anthony, Herbert Cox, C & C Farms Southern Farm Bureau Ins. Co.
Huntington B. Downer, Houma, for Waterworks Dist. No. 3.
Thomas L. Wright, Houma, for Hibernia Nat. Bank for the Charles B. Gilbert Trust and James and Dorothy Antill.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
This is a personal injury action for damages sustained when Mrs. Matt stepped into an open water meter box and fell. From a judgment dismissing their suit as to all defendants, plaintiffs appeal as to two defendants. We affirm.

LIABILITY OF C & C FARMS
The water meter box was located on property the Matts subleased from C & C Farms.[1] Plaintiffs sought recovery based on the lessor's warranty imposed by the Civil Code.
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
LSA-C.C. art. 2695. Mr. Matt admitted at trial, however, that one of the terms of the verbal lease was that he would maintain the property. The issue then is whether, in light of the maintenance agreement, C & C Farms is liable for Mrs. Matt's injury.
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
LSA-R.S. 9:3221.
Although C & C Farms was not the owner of the premises, but rather was the Matts' sublessor, we believe that the agreement by which Mr. Matt was to maintain the property absolved C & C Farms from liability for injuries unless C & C Farms had failed to remedy a defect within a reasonable time of notice thereof.
LSA-R.S. 9:3221 clearly gives authority for contractual modification of the lessor's warranty imposed by the Civil Code. The only question is whether a lessor who is not the owner can benefit from this provision. The logic for the rule of section 3221 is readily apparent. It is the person whose responsibility it is to maintain the property who is likely to know the defects in the premises. The absentee landlord is in no position to know unless he is informed. The tenant lives on the property and maintains it. Consequently he is in the best position to discover problems. He then must notify the landlord, and the landlord must remedy the problem within a reasonable *920 time after notice of the problem, or be liable for injury caused thereby. The logic is no less compelling, whether the landlord is owner-lessor or merely a lessee-sublessor.
The language of Civil Code article 2695 is all inclusive. It imposes liability on the lessor, but LSA-R.S. 9:3221 provides that in certain cases, the owner is not liable for injury. Although we have found no cases in which section 3221 has been applied to a controversy between sublessor and sublessee, we believe that a fair reading of these two provisions together leads inescapably to the conclusion that a sublessor is not liable for injury to the sublessee when the sublessee has assumed responsibility for the premises.
Before the enactment of LSA-R.S. 9:3221 in 1932, there was no express provision allowing the lessor to shift some of his burden to the lessee, but courts allowed it by means of an agreement between the parties. See Clay v. Parsons, 144 La. 985, 987, 81 So. 597, 597 (1919). Moreover, it is a basic principle of our law that parties to a contract may "renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good." LSA-C.C. art. 11. Consequently, parties to a lease have the right, as do parties to any contract, to broaden or restrict their respective rights and obligations that otherwise come about by operation of law. Shifting the burden of responsibility for the maintenance of the premises from the lessor to the lessee by their own agreement has never been considered against public policy. Furthermore, the French authorities, commenting on the French code article which is identical to our Civil Code article 2695, agreed that it was permissible for the lessor to stipulate that no warranty was made for vices or defects in the leased premises. 30 Dalloz.Rep.S. 196; 3 Duvergier 328, S. 345. Thus, when LSA-R.S. 9:3221 was enacted, it was already the law that where a lessee assumed responsibility for the premises, he was contractually barred from recovering from the lessor for injuries.
Where third persons were involved, however, the lessee's assumption of responsibility was not a defense for the owner. See Klein v. Young, 163 La. 59, 111 So. 495, 499 (1926).[2] It was this third party gap that the Legislature closed in 1932 with LSA-R.S. 9:3221, by extending the landlord's protection to suits by third parties, i.e., "anyone on the premises who derives his right to be thereon from the lessee." Accordingly, we believe that the use of the word "owner" was intended as illustrative rather than exclusive. It would be woefully inconsistent for the law to allow an owner of property to abrogate his lessor's responsibility by contractual stipulation, and yet not allow the sublessor to do likewise. In fact, to not allow the sublessor this privilege would be to deprive him of his right as a contracting party to broaden or restrict his rights, as guaranteed by article 11 of the Civil Code.
Having concluded that LSA-R.S. 9:3221 does apply to the instant case, Mr. Matt's admission at trial that the parties agreed he would maintain the property sufficiently establishes such an agreement. No better proof can be had of the existence of an agreement than the admission of its existence by the contesting party. There was no showing that C & C Farms had been advised of a defect and failed to remedy it within a reasonable time. Indeed, the Matts themselves apparently did not know of the uncovered meter box until Mrs. Matt stepped into it. Therefore, C & C Farms is not liable for any injury Mrs. Matt received.

LIABILITY OF THE WATERWORKS
Plaintiffs seek recovery from Terrebonne Parish Waterworks District 3 under a theory of strict liability, LSA-C.C. art. 2317. To recover, plaintiffs must prove that the injury was caused by a defective thing in the custody of defendant. Jones v. City of Baton Rouge, 388 So.2d 737, 739 (La.1980); *921 Loescher v. Parr, 324 So.2d 441, 449 (La. 1975). The question whether the water meter box was defective is answered by determining whether it occasioned an unreasonable risk of harm. Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983).
In deciding whether something presents an unreasonable risk of harm, the court must weigh the magnitude and the probability of the injury against the burden of preventing the injury. Entrevia v. Hood, 427 So.2d at 1150. The third circuit declined to impose strict liability in a case similar to the instant case. In Goodlow v. City of Alexandria, 407 So.2d 1305 (La. App.3d Cir.1981), plaintiff was injured when his automobile struck an open sewer manhole. The court noted that there was no evidence of any imperfection in the manhole itself or in the cover. The plaintiff's claim was based merely on the fact that the cover was missing. The fact that a thing creates a hazard does not necessarily mean it is defective within the meaning of strict liability. Entrevia, 427 So.2d at 1149; Goodlow, 407 So.2d at 1307. There must be proof of an unreasonable risk of harm. "Unreasonable" is the key word. The plaintiff must show that the risk created by the thing was unreasonable under all the circumstances.
We believe that under the circumstances presented here, the risk was not unreasonable. The open water meter box did present a risk of harm to anyone walking in the Matts' yard. According to the testimony of Mr. Matt and his brother, the hole was five to six inches wide, nine to ten inches long, and four to six inches deep. Mrs. Matt fell as she was walking across her yard toward her mobile home, and her injury was diagnosed as a lumbar sprain. She testified that when she fell, she wrenched her back, and that even after extensive medical treatment for the three years between the injury and the trial, she was still in pain and was unable to resume her normal activities.
On the other hand, the water system of Terrebonne Parish, including the water meter boxes, is a necessity. The Waterworks offers a service to the residents of the area without deriving any profit therefrom. It is always possible that thieves or vandals might remove water meter box covers. Or some vehicle, perhaps even a lawn mower, might strike the cover and knock it off.
Although the record reflects that the Waterworks kept replacement covers in stock, and that replacement is a very simple process, we are not prepared to impose upon the Waterworks the duty of constant inspection of meter boxes for missing covers. Considering the burden that would be placed on the Waterworks if it were required to constantly monitor meter boxes for missing covers, the risk was not an unreasonable one. We note, however, that if the Waterworks had failed to replace a missing cover within a reasonable time after being notified thereof, another question entirely, one of negligence, would be presented.
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
SAVOIE, J., agrees in part and dissents in part and assigns reasons.
SAVOIE, Judge, dissenting, in part.
I respectfully dissent, in part.

LIABILITY OF THE WATERWORKS
Under a theory of strict liability, under La.C.C. art. 2317, a plaintiff must prove that the thing which caused the damage was in the custody of defendant, that the thing had a defect or vice (that is, that it occasioned an unreasonable risk of harm to another) and that the injury was caused by the defect. Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980); Loescher v. Parr, 324 So.2d 441 (La.1975).
In the present case, the trial court found that strict liability did not apply in that the water meter was not in the custody of the Waterworks. I would hold this finding to be erroneous.
*922 The Waterworks is and remains the owner of the meter box. If there is a report of a broken meter box, the Waterworks repairs the box at no cost to the customer. Obviously, the customer is not free to tamper with the meter box in any manner. The meter box is placed on one's property solely for the benefit of the Waterworks. The meter box does not supply water, rather it is a measuring device which determines the amount of water used by the customer so that the Waterworks can bill the customer. Installation, repair, replacement, and maintenance are solely within the control of the Waterworks. Therefore, although the meter box is placed on the customer's property, its care and control (the essential elements of custody) remain in the Waterworks.
The next element in proving a claim in strict liability is whether the meter box occasioned an unreasonable risk of harm to another. The Waterworks relies on Baker v. Sewerage and Water Board, 466 So.2d 720 (La.App. 4th Cir.1985), claiming that the missing cover was not an inherent defect in the thing. In Baker, supra, the cover was to a valve box instead of a meter box. The cover was 8½ inches in diameter and 3 5/8 inches thick. Because of its weight, it was difficult to remove, often requiring a special tool. That type of cover was only removed to cut off water to customers and not carried in defendant's general inventory.
The Court in Baker, supra, found that the missing cover was not a strict liability defect. Under the circumstances the Court concluded that the risk of someone moving the heavy cover when weighed against the necessity of water facilities did not present an unreasonable risk of harm. I find Baker, supra, to be distinguishable.
In the present case, there is no testimony indicating that the covers are extremely heavy. On the contrary, a representative of the Waterworks testified that at the time of the accident, it was a policy to keep replacement covers on the Waterworks trucks. The ease of replacing the cover when compared to the possible harm of someone stepping on the meter box makes an open meter box an unreasonable risk. I therefore find the second element of strict liability present in this case.
I also find the third element of strict liability present in this case. There is testimony that Mrs. Matt complained of back pain when her husband and brother-in-law helped her out of the hole. There was testimony that Mrs. Matt's leg was bleeding. I would find, therefore, that there was proof of injury caused by the defect.
To rebut plaintiff's prima facie case in strict liability, there are three defenses available. The custodian can escape liability by showing that the harm was caused by the fault of the victim, by the fault of a third party, or by an irresistible force. Swain v. Sewerage and Water Board of New Orleans, 413 So.2d 233 (La.App. 4th Cir.1982); and Loescher, supra. The record contains no evidence of any of these defenses. As such, I find defendant has failed to rebut plaintiff's prima facie case.
For the above and foregoing reasons I respectively dissent.
NOTES
[1] This property was the subject of several leases. Hibernia National Bank in New Orleans, as trustee of the Charles B. Gilbert Trust, leased the property to James and Dorothy Antill on May 21, 1973. On June 13, 1973, the Antills subleased the property to Leon Cox. On May 28, 1976, Leon Cox subleased the property to Anthony Cox for use by C & C Farms, a partnership between Anthony Cox and Herbert Cox, Jr. C & C Farms then subleased to the Matts.
[2] The owner's liability in this case was based not on lease law, but on tort law.