600 So.2d 1358 (1992)
Carrol J. RIVET and Kathryn Rivet
v.
Charles J. LeBLANC, et al.
No. 91 CA 0550.
Court of Appeal of Louisiana, First Circuit.
May 22, 1992.
*1360 Danny J. Lirette, Houma, for plaintiffs and appellants Carrol J. Rivet and Kathryn Rivet.
Lloyd T. Bourgeois, Labadieville, for defendants and appellants Charles J. LeBlanc and State Farm Fire and Cas. Co.
J. Rene Williams, Houma, for defendants and appellees Kermit Wurzlow, Frank Wurzlow Jr., and Aetna.
James R. Degate, Houma, for defendant and appellee Highland Ins. Co.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Carrol Rivet filed this suit to recover damages for personal injuries he sustained.[1] Rivet, a deputy marshall in the Houma City Court Marshall's Office, while attempting to serve process on Margie Hughes for writing bad checks, fell through the steps of a fishing camp located near Chauvin, Louisiana. Rivet named as defendants Kermit Wurzlow, Frank Wurzlow and their insurer, Aetna Casualty & Surety Company; Rayford Hall; Margie LeBoeuf, a/k/a Marjorie Hughes, a/k/a/ Margie Hughes;[2] and Charles LeBlanc and his insurer, State Farm Fire and Casualty Company. Highland Insurance Company intervened to recover worker's compensation benefits paid to Rivet.

FACTS
The Wurzlows for many years leased out small tracts of land along Bayou Little Caillou for nominal amountsin recent years $250.00 paid annuallyto people who wanted to build fishing camps. Nolan Picou entered into a lease agreement with the Wurzlows and with their permission built the wood frame camp in question. Alton Picou purchased the camp from Nolan Picou in 1981.[3] Alton Picou lived on the property, paying rent to the Wurzlows until 1984, when he sold the camp to Rayford Hall. The sale between Hall and Picou was executed in authentic form. It is undisputed that no document establishing separate ownership of the camp structure from the soil was filed in the public records.
After Hall and Picou executed the sale document, Hall and Charles LeBlanc, a fishing buddy, went to the Wurzlows' office and executed a lease. It contains a hold harmless and indemnity provision along with a clause whereby the lessees "accept the premises in its present condition and assume full responsibility for the condition of same without any liability or obligation of any kind whatsoever upon the part of the owners...."
The record also reveals that Hall and LeBlanc entered into a lease/purchase *1361 agreement, whereby Hughes purchased, at least according to Hall and LeBlanc, Hall's interest in the camp and lease and Le-Blanc's interest in the lease. The lease/purchase document is dated October 21, 1985. The lease/purchase agreement also contains a clause that purports to transfer risk: "We [Hall and LeBlanc] will not be held responsible for any damages or repairs at said property."
On July 20, 1984, Hall and LeBlanc paid the rent for the period July 20, 1984, through July 20, 1985. On July 8, 1985, Hall and LeBlanc paid the rent for the period July 20, 1985, through July 20, 1986. Although Hughes tendered the rent for July 20, 1986, through July 20, 1987, in December 1986, the Wurzlows rejected the offer.
On July 29, 1986, while Hughes was residing in the camp, Rivet fell through the steps while attempting to serve process on her.[4]
After a trial on the merits, the trial court rendered judgment in favor of Rivet and against Hall and LeBlanc. It also dismissed the Wurzlows from the suit. From this judgment, LeBlanc and Rivet appeal.

ANALYSIS
Among other things, Rivet contends the trial court erred in not finding the Wurzlows were the owners of the camp structure, which would render them liable for damages caused by the defective steps.[5] In support of his position, Rivet relies on Louisiana Civil Code article 491, which provides:
Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees may belong to a person other than the owner of the ground. Nevertheless, they are presumed to belong to the owner of the ground, unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located.
The language of this article is clear and unambiguous; therefore, it must be applied as written. LSA-C.C. art. 9. Under Civil Code article 491, a presumption is created that in the absence of a document filed in the public records the owner of the soil is the owner of its component parts. The presumption is conclusive. Broussard v. Northcott Exploration Co., 481 So.2d 125 (La.1986). Here, since separate ownership was not established in the conveyance records as to third persons, the Wurzlows are considered the owners of the building as well as the underlying soil.
The trial court erred as a matter of law regarding the proper interpretation of Civil Code article 491. However, in the alternative, the trial court ruled that if the Wurzlows were the owners of the structure, they are relieved of liability by the hold harmless agreement found in the tenancy agreement. As stated above, the tenancy agreement contains a hold harmless and indemnity provision along with a clause wherein the lessees "accept the premises in its present condition and assume full responsibility for the condition of same without any liability or obligation of any kind whatsoever upon the part of the owners...."[6]
The lease provision must be read in light of LSA-R.S. 9:3221, which provides:

*1362 The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
The record contains no evidence that establishes the Wurzlows had actual or constructive knowledge of the defective stair step. We find the Wurzlows are relieved from strict liability by LSA-R.S. 9:3221 and the pertinent lease provision. Dufrene v. Kaiser Aluminum & Chemical Corp., 572 So.2d 771 (La.App. 4th Cir.1990). Thus, we affirm the ruling of the trial court dismissing plaintiffs' suit against the Wurzlows.
The trial court implicitly found the lease/purchase agreement between Hall, LeBlanc, and Hughes invalid based on the following facts: that Hughes did not sign the agreement; that the agreement called for monthly payments of $250.00, but Hughes testified she paid $200.00; that Hall did not inform the Wurzlows he sold the camp to Hughes, even though he had the opportunity; that Hall after the date of the sale asked Hughes why she had not paid the rent with the money he had given her; that Hall stated he had not visited the camp after the date of the purported sale, but was seen at the camp on two occasions; and that Hughes was unable to show the Wurzlows proof of ownership when she went to pay the rent in December 1986. Also pertinent is the fact that Hall and Hughes were engaged in an intimate relationship. A trial court's factual findings cannot be reversed on appeal in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). Based on the record before us, we cannot conclude the trial court was clearly wrong.
The trial court found LeBlanc liable to Rivet as lessee of the premises. Le-Blanc signed the tenancy agreement with the Wurzlows. He paid at least part of the rent. Apparently, he kept his brother's boat at the camp and used the premises to clean his catch and boat after shrimping and fishing. He spent some nights at the camp, and he helped Hall with some repairs. LeBlanc also helped pay for some of the utilities such as the water bill. Le-Blanc signed the alleged lease/purchase agreement which only referred to the camp structure. Moreover, LeBlanc in the tenancy agreement agreed to indemnify and hold the Wurzlows harmless from liability to third persons. Based on the record before us, we cannot conclude the trial court was clearly wrong in this finding. Rosell v. ESCO, 549 So.2d at 844-45.
The trial court awarded Rivet $70,000.00 in general damages, $15,750.00 for lost wages, and $12,879.57 for medical expenses. Ms. Rivet was awarded $5,000.00 for her loss of consortium claim. Rivet contends the general damage award is inadequate and should be raised to $125,000.00.
Before an award for damages can be questioned as inadequate, the reviewing court must look first not to prior awards, but to the individual circumstances of the present case. A damage award should not be disturbed by a reviewing court absent a showing of clear abuse. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, 341 So.2d 332 (La.1976). Relying on prior awards in similar cases is proper only after an articulated analysis of the facts discloses an abuse of discretion. Reck v. Stevens, 373 So.2d at 501.
Rivet, as he was walking up the steps to the door of the camp, fell through a defective step. After going home to clean up, he continued to work the rest of the day. The next morning he began to experience pain in his joints and arms. Two weeks later, Rivet went to his family practitioner, Dr. Richard Haydel, who placed him on cortisone injections. On the fourth visit, Haydel ordered a CAT scan. The scan revealed a one millimeter bulging *1363 disc at C-3 and C-4, a one to two millimeter bulging disc at C-4 and C-5, and a three millimeter disk protrusion at C-5 and C-6. The scan also revealed narrowing of the disc spaces at C-6 and C-7 along with mild degenerative changes at C-2 and C-3. Haydel called in Dr. William Kinnard, an orthopedic surgeon.
Dr. Kinnard performed a myelogram on September 5, 1986, apparently because Rivet complained of numbness and radiating pain. The test indicated cervical spondylosis, nerve root impingement, and neurologic impairment. Kinnard recommended Rivet undergo an anterior cervical discectomy and fusion at C-5 and C-6, and C-4 and C-5. Kinnard performed the surgery on September 8, 1986. Rivet was in the hospital about eight days. He continued to see Kinnard for about eight months after the operation. Although the operation was successful, Kinnard assigned a disability rating of 20% of the body as a whole.
According to Rivet, he still has headaches two to three times a month. His wife applies hot compresses on his neck every morning and massages his neck and shoulders. Rivet complains he cannot engage in many of the activities he once enjoyed, such as fishing and mowing the grass. Rivet also testified he has not had sexual relations with his wife since the accident.
We cannot say from our review of this record that the trial court abused its great discretion in its awards to the Rivets, and we affirm said awards.
The trial court awarded Highland Insurance Corporation, intervenor, $7,110.51 for worker's compensation benefits and $12,879.51 in medical expenses that Highland paid. Rivet assigns as error the failure of the trial court to assess Highland with its portion of the cost of litigation, including attorney fees, under Moody v. Arabie, 498 So.2d 1081 (La.1986).
In Moody, the Louisiana Supreme Court held that an employer who has made worker's compensation payments to an injured employee co-owns the right to recover the paid compensation from a third party tort-feasor, and as a co-owner the employer must share on a pro-rata basis the cost of recovering the amount paid. Moody instructs the lower courts to examine, among other factors, the contingency fee contract between the plaintiff and his attorney, the cost associated with the recovery, and the time and resources expended by the intervenor, if any, which may have aided in the recovery. Moody also mandates contribution of litigations costs by the employer. Major v. Cotton's, Inc., 551 So.2d 57 (La.App. 1st Cir.1989). But a plaintiff who seeks to recover from the intervenor a proportional share of the cost of recovery, must introduce evidence sufficient to enable the court to make the proper apportionment. Plaintiff may introduce this evidence at the trial. He also has the right to have a post-judgment hearing on this issue. Samanie & Barnes v. Lawler, 517 So.2d 340 (La.App. 1st Cir.1987); Thomas v. Hartford Ins. Co., 540 So.2d 1068 (La.App. 1st Cir.), writ denied, 542 So.2d 516 (La.1989). Rivet did not introduce evidence at the trial, or file a rule to apportion litigation costs, including attorney fees. Accordingly, the trial court did not have at its disposal the information needed to resolve the issue. Thus, we affirm the trial court's ruling on this issue.
Accordingly, the judgment of the trial court is affirmed at LeBlanc's and State Farm's costs.
AFFIRMED.
LANIER, J., concurs in the result and assigns reasons.
LANIER, Judge, concurring.
I concur in the result. A detailed analysis of the rights and duties of the Wurzlows (as owners and lessors), LeBlanc and Hall (as lessees) and Rivet (as a third person) is necessary to properly adjudicate this case.

PERTINENT FACTS
Because no instrument evidencing the separate ownership of the camp in LeBlanc *1364 and Hall has been filed for registry in the conveyance records of Terrebonne Parish, the Wurzlows are conclusively presumed to be the owners of the camp and the land to which the camp is attached for purposes of their legal relations with Rivet, a third person. La.C.C. art. 491 and Comments (c) and (e) therefor; Broussard v. Northcott Exploration Company, Inc., 481 So.2d 125 (La.1986); La.C.C. arts. 1849, 1850 and 1851; La.R.S. 15:433; A. Yiannopoulos, 2 Louisiana Civil Law Treatise § 116, pp. 264-266 (1991).
The legal relations between the Wurzlows (as lessors) and LeBlanc and Hall (as lessees) are controlled, in part, by a written lease that provides, in pertinent part, as follows:

I/We accept the premises in its present condition and assume full responsibility for the condition of same without any liability or obligation of any kind whatsoever upon the part of the owners and agree to hold the owners free and harmless from any and all claims for damages or injuries arising out of the use and occupancy of the premises by me, my agents, employees or other persons acting under my direction or on said premises by license or invitation of me. I/We will, at owner's request, appear and defend any suit arising from any such loss or liability at my own sole cost and expense, and will pay any judgment that may be entered against owner therein when same is finally determined.
(Emphasis added)
The first sentence of this paragraph contains (1) an assumption of responsibility by the lessees for the condition of the premises pursuant to La.R.S. 9:3221, and (2) an indemnification (hold harmless) provision.[1]

APPLICABLE GENERAL LAW
The lease herein is a synallagmatic contract in which the Wurzlows gave LeBlanc and Hall the enjoyment of the land and camp for a stipulated price. La.C.C. arts. 2669 and 2674. Except as modified by the lease contract, the obligations and rights of the Wurzlows as lessors are controlled by La.C.C. arts. 2692-2709, and the obligations and rights of LeBlanc and Hall as lessees are controlled by La.C.C. arts. 2710-2726. La.C.C. arts. 2692, 2693, 2695, 2710 and 2716 are pertinent to the instant case. Pursuant to Article 2692(2) the lessor is obligated to maintain the thing leased in such a condition so that it can be used for the purpose for which it was hired. Article 2693 requires the lessor to deliver the leased thing in good condition and make "all repairs which may accidentally become necessary". Article 2695 provides as follows:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Article 2710 obligates the lessee to enjoy the thing leased as a good administrator, *1365 according to the use for which it was intended. Article 2716 requires the lessee to repair at his own expense certain enumerated defects.
These above cited Civil Code articles regulate the legal relations between the lessor and the lessee; they do not regulate the legal relations between the lessor or lessee and third persons (such as Rivet). Thus, it has been held that third persons do not have a cause of action for damages under Article 2695, and they must seek relief under causes of action in the general tort provisions of La.C.C. 2315 et seq. Dye v. Kean's, 412 So.2d 116, 119 (La.App. 1st Cir.), writ denied, 413 So.2d 506 (La.1982).
A review of La.C.C. art. 2315 et seq. shows that three articles potentially provide causes of action for Rivet; they are Articles 2315, 2317 and 2322. The general duty of the owner of immovable property is set forth in Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983) as follows:
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence.... This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315.... The difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La. C.C. 2317, a claimant is relieved of proving the defendant's scienter.... Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the `custody' of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. In both negligent and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing.... Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty.
(Citations omitted)
Article 2322[2] provides as follows:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.

LIABILITY OF THE WURZLOWS
La.R.S. 9:3221 provides as follows:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
In their lease agreement with the Wurzlows, LeBlanc and Hall agreed to "assume full responsibility for the condition of" the leased premises. In Hebert v. Neyrey, 445 So.2d 1165, 1168 n. 3 (La.1984), the court observed that "[H]owever, if the lessee assumes responsibility for the condition of the leased premises, the owner is not liable for injury to the lessee or anyone on the premises caused by a defect in the premises *1366 unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time", and cited La.R.S. 9:3221 as authority. The policy reason for La.R.S. 9:3221 is discussed in Matt v. Cox, 478 So.2d 918, 919-920 (La.App. 1st Cir.), writ denied, 479 So.2d 913 (La.1985) as follows:[3]
The logic for the rule of section 3221 is readily apparent. It is the person whose responsibility it is to maintain the property who is likely to know the defects in the premises. The absentee landlord is in no position to know unless he is informed. The tenant lives on the property and maintains it. Consequently he is in the best position to discover problems. He then must notify the landlord, and the landlord must remedy the problem within a reasonable time after notice of the problem, or be liable for injury caused thereby.
La.C.C. arts. 2315, 2317 and 2322 and La. R.S. 9:3221 must be construed in reference to each other. La.C.C. art. 13. Thus, if a lessee contractually assumes responsibility for the condition of the leased premises, the obligations owed by an owner-lessor pursuant to La.C.C. arts. 2315, 2317 and 2322 to third persons on the premises are modified, and, thereafter, the owner-lessor is not liable for injury caused by a defect in the premises to the third person unless the owner-lessor knew, or should have known, of the defect, or received notice of the defect and failed to remedy it within a reasonable time.
No evidence was presented to show that the Wurzlows knew, or should have known, of the defective step, or that they received notification of the defect and failed to remedy it within a reasonable time. The trial court correctly dismissed the claims against the Wurzlows.[4]See, for example, Van Buren v. Continental Insurance Company, 522 So.2d 1326 (La.App. 2d Cir.), writ denied, 524 So.2d 522 (La.1988); Cox v. Busch, 503 So.2d 715 (La.App. 3rd Cir.1987).

LIABILITY OF LEBLANC AND HALL
LeBlanc and Hall are not liable under Article 2322 because they are not the owners of the camp. They are not liable under Article 2315 because there is no evidence in the record showing they either knew, or should have known, of the defective step. Thus, if LeBlanc and Hall are liable to Rivet, it would have to be pursuant to Article 2317.
As previously indicated, the elements of an Article 2317 cause of action are (1) the thing that caused the damage was in the custody (garde) of the defendant; (2) the thing had a vice or defect that created an unreasonable risk of harm; and (3) the plaintiff's injuries were caused by the defect. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990). It is not disputed herein that the thing (camp steps) had a vice or defect (rotten condition) that created an unreasonable risk of harm, or that the plaintiff's (Rivet's) injuries were caused by the defect. The only question remaining is whether LeBlanc and Hall had the custody (garde) of the camp.
Generally speaking, the owner of a thing has the custody (garde) of it. Ross v. La Coste de Monterville, 502 So.2d 1026 (La. 1987). However, there may be situations where the custody (garde) of a thing reposes with someone other than the owner. In *1367 Loescher v. Parr, 324 So.2d 441, 449 n. 7 (La.1975) appears the following:
7. In Verlander, We are Responsible..., 2 Tulane Civil Law Forum, No. 2, p. 64 (1974), which contains a perceptive and thorough analysis of the French, Quebecois, and Louisiana interpretations, it is suggested: "[T]he things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others. It will not belong to the agent or the mandatory, the employee or the servant, or to anyone else for whom there is a responsible principal. The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it. He may also lose the care of this thing, principally by the theft of the thing."
(Emphasis added)
See also Griffin v. Foti, 523 So.2d 935 (La.App. 4th Cir.), writ denied, 531 So.2d 272 (La.1988). In King v. Louviere, 543 So.2d 1327, 1328-1329 (La.1989), the court set forth the following rules for determining who had the custody (garde) of a thing:

Under La.Civil Code article 2317 the person who has the garde of a thing is he who has the legal duty to prevent its vice or defect from harming another. The determination of the existence of this duty is made through a process of policy considerations similar to that used in determining other delictual duties.... To assist the trier of fact in this deliberation this court has set forth several general principles: the liability arises from the guardian's legal relationship to the thing whose defect creates an unreasonable risk of injury to others.... The garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them.... The guardian is in a better position than the innocent victim to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in the thing.
In the present case, and in many others, a very important consideration in determining whether a person has the garde of a thing may be found in the policy established by related statutes.

(Emphasis added; citations omitted).
Determining who has the custody (garde) of a thing is a question of fact. Doughty v. Insured Lloyds Insurance Co., 576 So.2d 461 (La.1991); Coleman v. Otis Elevator Company, 582 So.2d 341 (La.App. 4th Cir.1991). Further, in Doughty, 576 So.2d at 464, appears the following:
Under most circumstances ownership alone establishes the requisite benefit, control and authority to find garde.... Article 477 of the civil code defines ownership as "the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." Although ownership creates the presumption of garde, this presumption is rebuttable by the owner. To find otherwise would rewrite article 2317 to impose strict liability for the "ownership" of a defective thing rather than liability arising out of "custody" of the thing.
In Turner v. Turner, 455 So.2d 1374, 1379 (La.1984), the court discussed the effect of a rebuttable presumption as follows:
As in any matter in which there is a rebuttable presumption, the burden rests with the party challenging the presumption *1368 to convince the fact-finder that his proposed conclusion is more correct than the presumed one. A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary.... "Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear."
See also La.C.C. art. 1851; La.R.S. 15:432; L. Hargrave, Presumptions and Burdens of Proof in Louisiana Property Law, 46 La.L.Rev. 225, 225-227 (1985).
Because of the legislative policy expressed by La.R.S. 9:3221 and the other pertinent statutes, under the facts and circumstances of this case, LeBlanc and Hall had the custody (garde) of the camp, and they are liable to Rivet pursuant to Article 2317.[5] The judgment of the trial court on this issue is correct.
For the foregoing reasons, I respectfully concur.
NOTES
[1] Carrol Rivet's wife, Kathryn Rivet, also joined in the suit.
[2] A preliminary default judgment was entered against Hughes early in the proceedings but was never confirmed, according to the record. Hughes is not a party to this appeal.
[3] The record does not contain a written sale document between Nolan Picou and Alton Picou.
[4] The trial court found the accident occurred on July 19, 1986; however, this finding is not supported by the record.
[5] Specifically, Civil Code article 2322 provides that "[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." (Footnote omitted.)
[6] The trial court found the lease between the Wurzlows and Hall and LeBlanc had reconducted by the continued presence of Hall and LeBlanc's assignee, Hughes. We find no error in this ruling. G. Armstrong, Louisiana Landlord and Tenant Law 223, issue 4 (1992).
[1] The obligations to maintain the condition of the leased premises and to indemnify for "all claims for damages ... arising out of the use and occupancy of the premises" are not mutually inclusive. As will be hereinafter shown, if a lessee does not assume responsibility for the condition of premises pursuant to La.R.S. 9:3221, the owner-lessor of the premises remains liable to third persons for damages pursuant to La.C.C. arts. 2317 and 2322; however, the lessee could agree to indemnify the lessor for this liability. Further, an agreement to indemnify for "all claims for damages ... arising out of the use and occupancy of the premises" covers risks other than those caused by defects in the premises. The indemnification agreement controls the legal relations between the lessor (the Wurzlows) and the lessee (LeBlanc and Hall); it does not modify the legal relations between the lessor, or the lessee, with Rivet (a third person who is not a party to it). If La.R.S. 9:3221 is complied with, the legal relations between a lessor or lessee and a third person are modified.
[2] See also La.C.C. art. 660 which provides as follows:

The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passer-by. He is answerable for damages caused by his neglect to do so.
[3] For discussions of the history of La.R.S. 9:3221 see Fontan v. Estopinal, 529 So.2d 1330 (La.App. 5th Cir.), writ denied, 533 So.2d 17 (La.1988); Matt v. Cox, 478 So.2d at 920-921; B. Miller, Responsibility of Landlord and Tenant for Damages from Defects in Leased Premises, 20 La.L.Rev. 76, 87-89 (1959).
[4] However, if the lessee fails to assume responsibility for the condition of the leased premises in the lease, the lessor is liable to third persons for injuries caused by defects in the premises pursuant to Articles 2317 and 2322. Hopkins v. Travasos, 569 So.2d 1056 (La.App. 3rd Cir.1990). Obviously, if the Wurzlows did not own the camp, they would not be liable for damage caused by a defect in it, even though it was located on their land. Lewis v. Meadowcrest Hospital, 559 So.2d 983 (La.App. 5th Cir.1990).
[5] Compare, Goudchaux v. State Farm Fire & Casualty Company, 407 So.2d 1317 (La.App. 3rd Cir.), writ denied, 412 So.2d 1114 (La.1982), a case where the custody (garde) of the thing was not transferred from the lessor to the lessee.