688 So.2d 1191 (1996)
Regan Bernard GULLATT, Plaintiff,
v.
NEWELL INDUSTRIES, INC., et al., Defendants,
Walter T. Pipes, Inc., Applicant.
No. 29322-CW.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1996.
Writ Denied March 7, 1997.
*1192 Klotz & Simmons by F. John Reeks, Jr., Bodenheimer, Jones & Szwak by David A. Szwak, Shreveport, for Walter T. Pipes, Jr.
Frances M. Gowen, Jr., Shreveport, and A. Richard Snell, Jr., Bossier City, for Regan Bernard Gullatt.
Peatross, Greer and Frazier by John M. Frazier, Shreveport, for Insurance Company of North America.
Hicks & Hubley by S. Maurice Hicks, Jr. and Edwin L. Blewer, III, Shreveport, for Beltraction, Inc.
Rountree, Cox, Guin & Achee by Dale G. Cox and Roland J. Achee, Shreveport, for Shredders Manufacturing Company.
Lunn, Irion, Johnson, Salley & Carlisle by Brian D. Smith, Shreveport, for Texas Casualty and Property Insurance Company.
Charles G. Tutt, Shreveport, for Newell Industries, Inc.
Before WILLIAMS, GASKINS and CARAWAY, JJ.

WRIT GRANTED AND MADE PEREMPTORY
Writ granted and made peremptory. We grant supervisory writs in this personal injury *1193 action to reverse a ruling by the trial court which denied a motion for summary judgment by the defendant, Walter T. Pipes, Inc. (WTP). Our review of the record indicates that the legal issue regarding WTP's alleged ownership of the item of heavy machinery attached to WTP's land was incorrectly decided under La.C.C. art. 491, and there being no dispute of fact to resolve at trial, the reversal of the trial court's ruling will terminate the litigation as to this party in a case involving significant other unrelated disputes between the remaining parties. Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).

Facts
Regan B. Gullatt has brought this action against a number of defendants as a result of his injuries sustained on July 24, 1989 while working on an automobile shredder as an employee of Pipes Auto Shredders, Inc. (hereinafter Pipes Auto). The plaintiff's claims against the manufacturer of the shredder and certain defendants other than WTP concern the design and construction of the shredder and/or defects in the power belt lubricant which the plaintiff was spraying on the machinery's belt and drums at the time of the accident. Plaintiff's claim against WTP is based primarily upon the strict liability of La.C.C. art. 2322 or art. 2317[1] stemming from WTP's ownership of the land upon which the large piece of equipment was firmly attached. Plaintiff alleges that as owner of the land under a record deed under La. C.C. art. 491, WTP is also the presumed owner of this large construction attached thereto.
In support of its motion for summary judgment, WTP presented three deeds involving the property in question. In the first deed dated May 25, 1988, Walter Terry Pipes acquired the ownership of a 23.69-acre tract of land described in said deed, all buildings and improvements thereon, and the 250-ton automobile shredding machine welded and bolted to a concrete foundation on the tract. This deed also specifically described the shredder as the Newell Manufacturing Company No. 72 Vehicle Shredder in an exhibit listing the equipment conveyed with the tract of land. A few days later on May 31, 1988, Mr. Pipes[2] executed two additional instruments of sale intending to convey the ownership of the 23.69-acre tract to WTP and the ownership of the shredder to Pipes Auto.[3] By a cash sale deed (hereinafter the Deed), Mr. Pipes conveyed the 23.69-acre tract described in metes and bounds and "all tracks, building and improvements thereon." The Deed which was later recorded in Caddo Parish did not specifically describe the shredder as either included or excluded from the sale. At the same closing in the office of Mr. Pipes' attorney, Mr. Pipes conveyed, through a separate instrument (hereinafter the Bill of Sale), the same list of equipment including the shredder which Mr. Pipes had previously acquired in the May 25 deed. The Bill of Sale was never recorded in the conveyance records of Caddo Parish and contained no description of the land upon which the shredder was located.
In the Deed and the Bill of Sale, Mr. Pipes also signed as the president of both WTP and Pipes Auto. Mr. Pipes' testimony in deposition and by affidavit presented in support of the motion for summary judgment was that he intended to place the ownership of the land in WTP and the ownership of the shredder in Pipes Auto which were both his companies. Later, on August 1, 1988, Pipes Auto, which operated the auto shredding business, was leased the 23.69-acre tract by WTP in an unrecorded lease agreement.
On the basis of these facts, WTP sought summary judgment as the owner of the land only and not the shredder. Reviewing the conflicting jurisprudence discussed below interpreting La.C.C. art. 491, the trial court *1194 denied the motion for summary judgment, indicating that under said article WTP was conclusively presumed the owner of the shredder. In their joint brief filed in opposition to WTP's application to this court, the plaintiff and the other defendants, who have cross-claimed against WTP, (hereinafter collectively the "plaintiff group") argue that the trial court's denial of summary judgment was correct because of the following issues of fact and their positions regarding the law:
 Whether the Deed of the property to WTP conveyed the shredder?
 Whether the Deed to WTP was executed first or the Bill of Sale to Pipes Auto was executed first?
 Whether a tort victim is a "third party" within the meaning of La.C.C. art. 491?
 Whether WTP as owner and lessor of the land to which the shredder was attached may be liable for any defects in the shredder?

Discussion
We consider for the purpose of this ruling, despite contrary argument by WTP, that the shredder at all pertinent times was permanently attached to the 23.69-acre tract as a construction attached to the ground.[4] Since Mr. Pipes' Deed to WTP in its description of the tract of land made no exception regarding the shredder which would exclude its conveyance, WTP, on the face of that Deed and under our laws regarding accession, received title to the shredder as an immovable and a component part of the land. La.C.C. arts. 463, 490[5] and 2461.[6] Nevertheless, regardless of the implication of Mr. Pipes' Deed of the immovablethe land and the shredder as its component partMr. Pipes simultaneously executed the Bill of Sale which also purports to convey the shredder to Pipes Auto.
Although we will address below these two conflicting conveyances from the standpoint of registry and the public records doctrine, we first point out that under the jurisprudence concerning the reformation of instruments, it cannot be questioned that Mr. Pipes, as the vendor of these conveyances and as the president of the two corporate vendees, has stated an indisputable case of reformation of the Deed to exclude the shredder and has produced a contemporaneously written instrument, the Bill of Sale, as clear and convincing proof of his intended sale of the shredder to Pipes Auto. This court has expressed the principles regarding reformation between parties such as these,[7] as follows:
Reformation of instruments is an equitable remedy which lies only to correct mistakes or errors in written instruments when such instruments, as written do not express the true contract of the parties. Pipes v. Pipes, 343 So.2d 329 (La.App. 2d Cir.1977), writ denied 345 So.2d 904 (La. 1977), citing Merritt v. Hays, 237 La. 557, 111 So.2d 771 (1959). It is a personal action, even when applied to real estate, in which the burden is on the person seeking reformation to establish the mutual error or mistake by clear and convincing proof, parol evidence being admissible for this *1195 purpose. Id. Since the action is personal, a written instrument may be reformed so as to make it express truly and correctly the intention of the parties provided the rights of third parties have not intervened. Reynaud v. Bullock, 195 La. 86, 196 So. 29 (1940); Pellegrin v. Ditto, 625 So.2d 1356 (La.App. 1st Cir.1993). An instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument or who have relied on the public records. Reynaud v. Bullock, supra.
Lewis v. Saucer, 26,685 (La.App.2d Cir. 4/5/95), 653 So.2d 1254, 1259. Under these principles, there is no factual dispute that, as between Mr. Pipes, Pipes Auto, and WTP, Pipes Auto became the owner of the shredder on May 31, 1988, long before this accident occurred. Such ownership was thereafter further evidenced by the possession of Pipes Auto, through its employees such as the plaintiff, who maintained and exercised custody over the allegedly defective shredder. With this evidence now demonstrated, irrespective of the order of execution by Mr. Pipes, the written instruments are reformable to reflect the mutual intent exhibited at that closing and thereafter for the ownership of the shredder.
Nevertheless, Article 491 and the above quoted statement of the law of reformation of instruments both indicate that Pipes Auto's ownership of the shredder cannot be asserted against the rights of "third persons relying on the public records." Revision Comments (e), La.C.C. art. 491, Lewis v. Saucer, supra. Thus, the plaintiff group argues that the plaintiff, as a tort victim, is a "third party" within the meaning of Article 491 and that only the Deed to WTP was recorded.
The second sentence of Article 491 provides:
"Nevertheless, they [constructions] are presumed to belong to the owner of the ground, unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located."
Though this sentence does not contain the phrase "third persons relying on the public records," its focus is the requirement of "registry," and the comments to the article make it clear that "third persons relying on the public records," or, in other words, the public records doctrine, is the object of its concern.
In Camel v. Waller, 526 So.2d 1086, 1089-1090 (La.1988), the supreme court discussed at length our public records doctrine:
The public records doctrine is "founded upon our public policy and social purpose of assuring stability of land titles...."
* * * * * *
But as Justice Lemmon notes, that doctrine does not "create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded." Phillips v. Parker, 483 So.2d 972 (La.1986) (Lemmon, J.) Also, as Judge Redmann has so aptly pointed out, it is an essentially negative doctrine. Third persons are not allowed to rely on what is contained in the public records but can instead "rely ... on the absence from the public record of those interests that are required to be recorded."
* * * * * *
"[T]he primary concern of the public records doctrine is the protection of third persons against unrecorded interests." Phillips, 483 So.2d at 976. "[N]o right of any nature in immovable property can have any effect against third parties unless it is registered in the conveyance records or recorded in the mortgage records for the parish in which the property is situated...."
* * * * * *
The landmark decision in McDuffie v. Walker established the principle that a third person can acquire valid title from the owner of record even where the record owner is not the true owner since an act of sale of immovable property not recorded is null as to third parties. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909).
* * * * * *
Thus third persons can take any rights to immovables that are free from unrecorded claims. [Citations and some portions of text omitted].
This discussion of protected third parties under the public records doctrine is *1196 couched in terms of their acquisition of rights affecting immovables free from unrecorded claims so that upon the third party's registry of his acquisition instrument from the last owner with recorded title, he is presumed to have acquired ownership. The presumption expressed in Article 491 is a codification of the public records doctrine in the narrow context of the ownership of separable immovables or constructions such as the shredder. While this presumption is conclusive for the protection of third parties acquiring an interest in an immovable[8] based upon longstanding public policy concerns, it is inapplicable to a tort victim, or at least rebuttable by proof, such as in this case, of the true ownership of the immovable whether based upon recorded instruments or not.[9]Cf. La.C.C. art. 1850.
In Oswalt v. Irby Const. Co., 424 So.2d 348, 353 (La.App. 2d Cir.1982), we refused to make the presumption arising from registry conclusive to bar the claims of an injured tort victim holding:
As to the damage to the crop growing outside of the right of way, appellant's argument that plaintiff's lease agreement must be recorded pursuant to LSA-R.S. 9:2721 as a prerequisite to recovery is plainly without merit. The requirement of recordation "is established in favor of persons who acquire interest in the land in reliance on public records. It should have nothing to do with persons who cause damage to the crops of a lessee." Yiannopoulos, Louisiana Civil Law Treatise, Property, 2d Edition, § 91. (emphasis supplied).
Now, in this reverse context to Oswalt, we decline to change from this understanding of the public records doctrine which equally applies to refute the plaintiff group's assertion that because of the recordation of the Deed with its erroneous and overly broad description which failed to exclude the shredder, WTP is the owner of the shredder. The public records doctrine and the requirement of registry under Art. 491 likewise have nothing to do with persons who sustain damages from a defective immovable since they are not acquiring ownership rights affecting such immovable in reliance upon the public records. On the other hand, for the protection and remediation of tort victims, the law of strict liability has much to do with the responsibility of the true owner or party with the custody and garde of the property which, in this case, was clearly not WTP which had no access or maintenance rights to the shredder.
While our ruling agrees with the Fourth Circuit Court of Appeal's ruling in Myers v. Burger King Corp., 92-0400 (La.App. 4th Cir. 5/26/94), 638 So.2d 369, we recognize the contrary ruling of the First Circuit in Rivet v. LeBlanc, 600 So.2d 1358 (La.App. 1st Cir. 1992). The Rivet court, while finding that a tort victim could rely conclusively on the presumption of Article 491 created by the lack of registry of the title to a camphouse owned separately from the land, nevertheless inexplicably went on to hold that that same injured tort victim was subject to an unrecorded lease granted by the Article 491 owner which thus eliminated the strict liability of that landowner, shifting the liability to the lessee whose rights were nowhere established by recordation. The presumption of ownership under Article 491 with the attendant strict liability under Article 2322 was thus not conclusive in Rivet. This shifting of liability to the lessee resulted from La.R.S. 9:3221, which significantly, in addressing tort liability, makes no requirement that the lease granted by the record owner be recorded.
The final issue raised by the plaintiff group concerns the lease by WTP to Pipes Auto. In view of the above holding concerning the intent of the May 31, 1988 Deed and Bill of Sale, at the time of the August 1, 1988 lease, Pipes Auto was the owner of the shredder. WTP did not intend to lease that which it did not own and therefore leased only the land. In this situation, ownership *1197 and custody of the shredder and the possession of the land under the lease belonged solely to Pipes Auto. As lessor of the land, WTP had no right to the possession and maintenance of the shredder or access to Pipes Auto's business premises where the shredder was operated. Under these circumstances no general tort duty has been shown to be owed by WTP which had no ownership or custody of the defective thing.

Conclusion
Therefore, for the foregoing reasons, the ruling of the trial court denying WTP's motion for summary judgment is reversed. We render judgment in favor of WTP dismissing it from this suit. Costs are assessed equally against the plaintiff and the other defendants.
WRIT GRANTED AND MADE PEREMPTORY.
NOTES
[1] The recent 1996 amendments to these articles do not govern this action.
[2] Since the property was the community property of Mr. Pipes and his wife, Mrs. Pipes executed both the deed and bill of sale discussed above with her husband on May 31, 1988.
[3] At the time of the May 31, 1988 conveyance, the corporate name of Pipes Auto Shredders, Inc. was then Ark-La-Tex Shredders, Inc. which later, through a corporate name change, became Pipes Auto Shredders, Inc. We will refer to this corporation throughout as Pipes Auto.
[4] Under La.C.C. arts. 463 and 464, if the shredder is owned by the owner of the ground, it is a component part; if it is owned by another person, it is a movable. La.C.C. art. 464, Comment (d). See also Revision Comment (c) to Article 463.
[5] La.C.C. art. 490 provides in pertinent part:

Unless otherwise provided by law, the ownership of a tract of land carries with it the ownership of everything that is directly above or under it.
[6] La.C.C. art. 2461 provides:

The sale of a thing includes all accessories intended for its use in accordance with the law of property.
[7] The primary focus, for purposes of this discussion, is the reformation of the Deed to clarify Mr. Pipes' reservation of the ownership of the shredder. Nevertheless, we note that in order to meet the requirement of La.C.C. art. 491 to protect Pipes Auto's ownership of the shredder against third parties acquiring the land of WTP on the faith of the public record, as discussed below, the Bill of Sale to Pipes Auto should also be reformed to include a description of the land where the shredder was located so that as reformed it could be recorded. The parties, all being Mr. Pipes in his various capacities and apparently not being concerned about third party purchasers from WTP, are now faced with the claim of a tort victim because of these errors in the two instruments of conveyance.
[8] La.R.S. 9:2721 and 2722 enunciate the public records doctrine and the requirement of registry. The "third party" is defined as one "acquiring a real or personal right, privilege or permit to or affecting immovable property." La.R.S. 9:2722.
[9] A tort claim arising from a defective condition on land which has been acquired through thirty years of adverse possession by an owner without any recorded title must be directed at that owner despite the recorded title of the former owner which remains the last indicia of ownership in the public records.