546 So.2d 497 (1989)
Steven HARRIS, et al.,
v.
Bruce BAIRD.
No. CA 7363.
Court of Appeal of Louisiana, Fourth Circuit.
May 25, 1989.
Rehearings Denied August 9, 1989.
*498 Donald A. Meyer, Shusan, Meyer, Jackson, McPherson & Herzog, New Orleans, for plaintiffs.
Arthur J. Lentini, Hall, Lentini, Mouledoux & Wimberly, Metairie, for defendant.
Before GARRISON, KLEES, BYRNES, CIACCIO and ARMSTRONG, JJ.
CIACCIO, Judge.
The defendant appeals from a judgment for the plaintiffs in a suit on four promissory notes. For the reasons stated below, we affirm.

I.
The Plaintiffs are Steven Harris ("Harris"), Philip Sizeler, Ricky Sizeler and David Lingoni. The plaintiffs were the only stockholders of D.D.R.S. Corporation ("DDRS") until June, 1985. The principal product of DDRS is the "Omega Guestsafe". The defendant is Bruce Baird ("Baird"), president and chairman of the board of Production Products Corporation, Inc. ("PPC").
In April 1985, Harris, who had many business dealings with Baird, approached Baird to inform him that DDRS was for sale. Baird met with Harris to negotiate the possible purchase of DDRS by PPC. In a subsequent telephone conversation with Harris, Baird mentioned a purchase price of $125,000.00. Harris met with Baird a second time, and gave Baird copies of all documents and contracts affecting DDRS, including a copy of an October 17, 1984 service agreement between DDRS and PPC. Harris told Baird to take those documents to Baird's attorney to draw up the papers necessary to execute the sale.
Toward the end of May, Baird met with Harris for a third time regarding the purchase of DDRS and introduced Richard Keyworth ("Keyworth") to Harris at that meeting. Keyworth, who is not a party to this appeal, became a member of the Board of Directors for PPC in January, 1985.[1] His relationship to PPC before that date is not reflected in the record. However, Baird introduced Keyworth to Harris as his "old and close friend and associate". At this meeting, Baird informed Harris that PPC would not purchase DDRS, but that Keyworth was one of a group of investors interested in making the purchase.
In June 1985, the plaintiffs sold DDRS to Richard Keyworth and Associates, Ltd. for $125,000.00. The sale was paid in part by four promissory notes made personally by Keyworth to each of the four plaintiffs: $25,950.40 to Harris and $12,475.20 each to the other three plaintiffs. Baird signed as surety on the notes.
Keyworth personally was not originally a party to the stock purchase agreement. Instead, that agreement was between Keyworth and Associates, Ltd. and the plaintiffs. However, the stock purchase agreement was assigned to Keyworth personally and the assignment had the same date, June 26, 1985 as the four promissory notes. The promissory notes incorporate by reference the terms of the stock purchase agreement and reference the assignment. Thus, Keyworth was a party to the stock purchase agreement at the time he executed the four notes.
At the closing, but before the act of sale was concluded, Harris handed Keyworth copies of all documents and contracts affecting DDRS, including a copy of the October 17, 1984 service agreement between DDRS and PPC. The closing took place in *499 the office of Keyworth's attorney, who was the closing notary.

II.
The stock purchase agreement between Keyworth and Associates, Ltd. and the plaintiffs contains the following relevant provisions:
2. Warranties and Representations of the Seller
Seller hereby warrants and represents to and agrees with Buyer, as an inducement to Buyer to enter into this agreement, as follows:
2.14 Annexed hereto as Exhibit 2.14 is a list of all contracts and other instruments,... to which the company is a party ...
Paragraph 6 of Exhibit 2.14 provides:
There are no other agreements currently in force to which the corporation is bound nor will there be any other agreements on the closing date.
Paragraph 9, Sections 9.1, 9.1(a), and 9.3 of the stock purchase agreement provides:
9. Indemnification of Buyer and Seller
9.1 Seller hereby agrees to indemnify and hold Buyer harmless of, from, and against in respect of each of the following:
a. any and all loss, damage, liability, expense, or deficiency ... resulting from any misrepresentation ... pursuant to this agreement;
9.3 Buyer shall have the right ... to offset any liquidated claims against the Buyer or the Company on account of a breach by the Seller of any of the ... representations ... or other provisions of the Agreement against the principal amount or interest due by Buyer to Seller under the note.
The October 17, 1984 service agreement between DDRS and PPC was not listed in Exhibit 2.14. That agreement gives PPC the exclusive right to provide maintenance or service on all Omega Guestsafes in exchange for payment to DDRS of 12% of all net income received as a result of servicing the safes.[2] The record does not disclose whether any Omega Guestsafes ever were serviced by PPC.

III.
Keyworth made monthly payments on the notes as promised through February 1986. Later that month, Keyworth claimed to have discovered, for the first time, the existence of the October 14, 1984 service agreement between DDRS and PPC. He subsequently refused to make further payments on the notes. Keyworth claims that the existence of service agreement somehow lowered the value of the DDRS stock and, because that agreement was not listed in Exhibit 2.14 of the stock purchase agreement, he contends he is entitled to an offset under paragraph 9.3 of the stock purchase agreement to the extent that the service agreement devalued the DDRS stock. After Keyworth failed to make payments on the notes that were due in March 1986, the plaintiffs sent Baird a demand letter. Baird refused to make the payments due asserting that, as surety, he was entitled to invoke the same offset defense as Keyworth. The plaintiffs then filed this suit against Baird as surety on the promissory notes. After the suit was filed, Keyworth paid PPC $50,000.00, allegedly the purchase price for the buy-back of the servicing rights from PPC.

IV.
At trial, the plaintiffs introduced evidence, over Baird's objection, that although the October 17, 1984 service agreement between DDRS and PPC was not listed in Exhibit 2.14 of the stock purchase agreement, Keyworth knew or should have known of its existence before the act of sale was concluded. This was because 1) as a member of the board of directors for PPC and as a result of his relationship with Baird, Keyworth had to have known of the service agreement; and 2) Harris gave a copy of the service agreement to Keyworth at the act of sale. Baird objected to this *500 testimony as inadmissible parol evidence. The trial court overruled Baird's objection.
The trial court entered judgment for the plaintiffs for the principal amount remaining due on the notes ($51,930.68) plus interest and attorney's fees equal to ten percent of the amount due and costs. In his reasons for judgment, the trial court stated:
"Baird knew of, and in his capacity as President of P.P.C., Inc., was a party to the contract relied upon by Keyworth as maker and Baird as surety to offset the obligations sued upon in these proceedings. Keyworth's attorney obtained from Baird all the documents pertinent to the stock sale and Keyworth admitted receiving the contract at the closing.
"Keyworth knew, or should have known, personally or through his attorney, of the existence of contracts which Baird, as President of P.P.C., Inc., was aware. Thus Baird, seeking to use the offset defense, allegedly available to Keyworth, has failed to establish that offset is available to Keyworth."
On appeal, Baird argues that the judgment of the trial court should be reversed because 1) the trial court erred in admitting parol evidence to vary and expand the contents of the written stock purchase agreement; and 2) the trial court erred in prohibiting the admission of his preferred offset evidence.

V.
By his first assignment of error appellant contends that the trial court erred in allowing the admission of parol evidence to vary and expand the contents of a written purchase agreement in the absence of any pleading of fraud, error, simulation or ambiguity, relying on La.C.C. Art. 1848, which states,
"Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement."
Plaintiffs urge the admissibility of the parol evidence to reform the purchase agreement in order to show the true intent of the parties, i.e., that plaintiffs were selling the stock of D.D.R.S. and Keyworth was buying it subject to the existence of the outstanding service agreement. They argue that the omission of the maintenance agreement from the list of contracts in Exhibit 2.14 was a mutual mistake in a document prepared by Keyworth's attorney, and the list did not express the true intent of the parties since it omitted the P.P.C. contract.
After hearing the conflicting testimony the trial judge made a credibility call and held as a finding of fact, that Keyworth knew, or should have known, that he was buying the stock subject to the maintenance agreement, and we find that his factual conclusions are amply supported by the record.
We find that the trial judge did not err in admitting the parol evidence and in relying upon it to reform the contract because parol evidence is admissible to reform an instrument to show the true intent of the parties and to correct mistakes or errors in written instruments when such instruments, as written, do not express the true agreement of the parties. Valhi, Inc. v. Zapata Corp., 365 So.2d 867 (La.App. 1978); Agurs v. Holt, 232 La. 1026, 95 So.2d 644 (S.Ct.1957); Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948).
Additionally, testimony as to what took place before, during and after a contract's formation as to the business transactions between the parties is likewise admissible, B. Segall Co., Inc. v. Trahan, 290 So.2d 854 (La.1974). Elrod v. Le Ny, 193 So.2d 299 (La.App.1966).
Keyworth's and the plaintiffs' testimony that a copy of the maintenance and service agreement was delivered to him at the closing is admissible for the purpose intended to show the existence of the document, the knowledge of the purchaser of its existence at the time of the sale, and to show *501 the true intent of the parties, i.e., that the service contract was an outstanding contract of D.D.R.S. and Keyworth was buying the stock subject to the existence of that agreement.
The trial judge found that Keyworth had actual or constructive knowledge of the disputed contract when the sale took place. This finding of fact is amply supported by the record: Baird's company (PPC) was a party to and the beneficiary of the contract; Baird received a copy of the contract from Harris together with other papers to be delivered to Baird's attorney; Baird brought Keyworth into the negotiations; Baird and Keyworth are officers and directors of PPC and are in business together; Keyworth's attorney prepared the purchase agreement and closing documents which omitted the service contract from the list of outstanding obligations; Keyworth was handed a copy of the contract at the closing and made no protest at that time.
Since we find that the trial judge did not err in admitting the parol evidence and in concluding that plaintiffs met their burden of proof, we hold that the omission of the PPC service contract from the list contained in section 2.14 of the stock purchase agreement was a mutual mistake and we reform the stock purchase agreement to add to section 2.14 the PPC service contract. Accordingly, Keyworth and his surety, Baird, are not entitled to any setoff because of the omission of that document from section 2.14.
Baird next avers that the trial court erred in prohibiting the admission of defendant's proffered evidence at trial. Because of our holding that Keyworth and Baird are not entitled to any set-off, the testimony and exhibits sought to be introduced as evidence are irrelevant, and there was no error in excluding the preferred evidence.
For the foregoing reasons the trial court's judgment in favor of plaintiffs is affirmed.
AFFIRMED.
NOTES
[1] Keyworth intervened in this suit. However, on motion by the plaintiffs, the intervention was severed by order of the trial court.
[2] Baird's attorney drew up this agreement as well as Exhibit 214.