576 So.2d 555 (1991)
Myra A. ROBERT
v.
William ESPINOSA, d/b/a Downman Road Self-Service Storage, et al.
No. 90-CA-0469.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 1991.
Writ Denied April 26, 1991.
*556 Sherry Watters, New Orleans, for plaintiff/appellee.
R.A. Osborn, Jr., Gretna, for defendant/appellant.
Before GARRISON, BYRNES and WILLIAMS, JJ.
GARRISON, Judge.
The case at hand arises from property damage sustained due to an allegedly defective self-storage unit. On February 11, 1988, Myra Robert rented a self storage unit from Watson Homes, Inc., doing business as Downman Road Self-Service Storage. She executed a lease contract for a five foot by ten foot storage unit. The contract stated that tenants stored goods at their own risk and that the owner would not be liable for damage due to "... water, rain, or storm." Ms. Robert declined to purchase insurance to cover her stored goods.
Her belongings were stored from February 11, 1988 to September 25, 1988. In the interim she returned to check her unit and its contents two or three times. There was no observable damage to her goods. On September 25, 1988 Ms. Robert returned to the unit to remove her property and noticed that several items had sustained water damage to the degree that several items had some mildew on them and two other items were water marked.
Ms. Robert subsequently sued the storage facility. She was awarded $2,296.55 in damages, with legal interest, by the First City Court in New Orleans. The trial judge issued no reasons for judgment. The defendant has brought this appeal.
The relationship between the parties here is that of lessor-lessee. Brown v. Garic, 508 So.2d 123 (La. 4th Cir.1987); Louisiana Self-Service Storage Facility Act, LSA-R.S. 9:4756 et seq. The Self-Service Storage Act is also clear that the parties to the lease are free to contract between themselves as regards the actual terms of their lease. The lease in the case at hand clearly states that the lessee stores goods at her own risk and that was not liable for damages due to water, rain or storm.
The plaintiff-appellee argues that the lease here does not prevent recovery by the plaintiff as it does not preclude liability for defects in the defendants property of which he was or should have been aware. She cites LSA-R.S. 9:3221:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy *557 it within a reasonable time. [Emphasis added].
However, in order for the plaintiff to succeed in her suit under this article, she must show (i) that she sustained damages (ii) that there was a defect in the defendants property and (iii) that the defendant knew or should have known of this defect.
The record in the case at bar is completely devoid of any evidence that there was a defect in the defendant's property.
The plaintiff testified that in her opinion the roof had leaked because the ceiling lining sagged and the insulation was somewhat visible. She also testified that cardboard placed on the floor was damp and there were water marks on the lower most aluminum panel inside her unit. However, the testimony of Mr. Espinosa who managed the property revealed the insulation sagged throughout the building due to heat. He stated the water marks on the aluminum had been there since the building had been constructed and, were in fact the result of construction workers leaving the panels stacked outside during construction where water had sat on them for long periods leaving permanent marks. The positioning of the water marks on the panels confirms his explanation as it is only the panel lowest to the floor on one side which is discolored. (Certainly if roof leakage had caused this damage the upper panels would be stained). Furthermore, plaintiff's photographs of the ceiling show no watermarks on the white lining.
The defendant presented testimony from an expert witness in roofing construction, replacement and repair, who had inspected the roof and testified that there was no evidence of a leak, nor anything that could cause one, that the roof was a perfect roof, that there had been no repairs, that there was no construction defect. The plaintiff presented no expert testimony nor did she have anyone inspect the roof in question.
Finally, and perhaps most significantly, none of the many witnesses ever saw any water coming in the unit from any source, let alone the ceiling. In fact the evidence presented at trial shows the ceiling to be without defect. The plaintiff asserts no other defect in the defendant's storage unit, nor was evidence of any other defect presented.
Based on the aforementioned evidence contained in the record in this case, judgment of the trial court is hereby reversed as there was no evidence to support its finding.
REVERSED.