625 So.2d 1356 (1993)
Johnny L. PELLEGRIN and Doris Pellegrin
v.
William H. DITTO, Tanya B. Ditto, John A. Brady, Jr., Clara Callais Brady, Pat Brady, Kate Cheramie Brady, Henry J. Lafont in His Capacity as Trustee, and Travelers Insurance Company.
No. 92 CA 1845.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
*1358 William S. Watkins, Carolyn McNabb, St. Martin, Lirette, Shea & Watkins, Houma, for plaintiff-appellant, Johnny L. Pellegrin, et al.
Philip J. McMahon, McMahon, McCollan & Lyons, Houma, for defendant-appellee, William H. Ditto, et al.
Hortence M. Patterson, Law Office of James J. Morse, New Orleans, for intervenor, Travelers Ins. Co.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit for damages.

BACKGROUND
By Act of Cash Sale, dated December 10, 1973, John A. Brady, Sr. transferred certain immovable property to John A. Brady, Jr., Pat Brady, and William H. Ditto. The property transferred was described as follows:
The lower half of a certain tract of land in Lafourche Parish, on the right bank of Bayou Lafourche at about 36 miles below the town of Thibodaux, measuring one and one-half arpents (1-½) front more or less on Bayou Lafourche, and on the water's edge thereon by a depth of to a point on the upper line 384 feet, and on the lower lines 400 feet from edge of the right of way of Louisiana State Highway # 1 bounded above by land formerly of the Estate of Henry Madison, below by lands formerly of Washington Rodrigue, together with all buildings and improvements thereon, as well as rights, privileges and appertaining.
Being the same property acquired by John A. Brady, Sr. by virtue of a Sheriff's Deed dated March 7th, 1973, in that matter entitled WILLIAM H. DITTO Vs. A.O. RAPPELET, No. 29019, 17th Judicial District Court, Lafourche Parish, Louisiana, and filed in the conveyance records of the Parish of Lafourche, State of Louisiana.
On November 30, 1978, William H. Ditto and Tanya B. Ditto established an irrevocable inter vivos accumulation trust, establishing three separate trusts for the benefit of Steven C. Ditto, Diane L. Ditto, and Susan C. Ditto, respectively. John J. Erny, Jr. was named as trustee of the trusts. The sum of $16,500.00 dollars was donated to the accumulation trust upon the establishment of the trusts.
On that same day, John A. Brady, Jr. and Clara C. Brady established an irrevocable inter vivos accumulation trust, establishing three separate trusts for the benefit of Bonnie Elizabeth Brady, John A. Brady, III, Thomas Anthony Brady, and Joseph Abdon Brady, respectively. John J. Erny, Jr. was named as trustee of the trusts. The sum of $16,500.00 dollars was donated to the accumulation trust upon the establishment of the trusts.
On that same day Pat Brady and Kate C. Brady also established an irrevocable inter *1359 vivos accumulation trust, establishing three separate trusts for the benefit of Todd Mitchell Brady, Troy Patrick Brady, Toby James Brady, and Trent Marcus Brady, respectively. John J. Erny, Jr. was named as trustee of the trusts. The sum of $16,500.00 dollars was donated to the accumulation trust upon the establishment of the trusts.
Thereafter, by Act of Cash Sale dated November 30, 1978, William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady transferred "an undivided fifty (50%) percent interest" in their interest in the property acquired from John A. Brady, Sr. in 1973 (hereinafter referred to as "the Trust property") to John J. Erny, Jr., Trustee of the Brady children trusts. The recited consideration was $49,500.00. A little more than a month later, by Act of Cash Sale dated January 2, 1979, William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady, again transferred "an undivided fifty (50%) percent interest" in their interest in the Trust property to John J. Erny, Jr., Trustee of the Brady children trusts. The recited consideration was $49,500.00.
On January 1, 1988, John J. Erny, Jr., as Trustee of the Brady children trusts, and Sola Communications, Inc. (Sola) entered into a lease of the Trust property. As part of the consideration for the lease, Sola "assume[d] responsibility for the condition of said leased premises during the term" of the lease and agreed to "exonerate LESSOR from all responsibility by reason of any defect or vice" of the leased premises and buildings thereon as "fully and completely as LESSEE may do under the law, and particularly the provision of LRS 9:3221 as amended."

FACTS
On April 7, 1989, petitioner Johnny L. Pellegrin, while in the course and scope of his employment with Sola, fell through a side railing on a porch attached to a building on the Trust property. As a result of this incident, Pellegrin sustained serious injuries.
Thereafter, on April 2, 1990, petitioners, Johnny L. Pellegrin and his wife, Doris Pellegrin, filed the instant suit for damages against William H. Ditto and Tanya B. Ditto; John A. Brady, Jr. and Clara C. Brady; Pat Brady and Kate C. Brady; Henry J. Lafont, Trustee of the Brady children trusts,[1] and Travelers Insurance Company. Petitioners alleged that defendants were negligent and strictly liable under LSA-C.C. arts. 2315, 2317, and 2322 for the injuries sustained by Johnny Pellegrin for failing to maintain the premises, failing to conduct adequate inspections, and having custody of a defective thing.
In answers to interrogatories, defendants alleged that the Brady children trusts, and not the named defendants, were the owners of the leased premises.
On April 6, 1990, petitioners amended their petition to name each of the individual Brady children as additional defendants.[2] On April 5, 1991, petitioners again amended their petition to name each of the individual Brady children as defendants.
Travelers Insurance Company intervened in the proceedings. Travelers alleged that it was Sola's worker's compensation insurer and that it had paid worker's compensation and medical benefits on behalf of Pellegrin. Accordingly, Travelers sought reimbursement of the worker's compensation and medical benefits paid.
After a trial on the merits, the trial court rendered judgment in favor of all of the defendants, dismissing petitioners' claims against them, with prejudice. Travelers' petition of intervention was also dismissed.
From this adverse judgment, petitioners appeal, assigning the following errors:[3]
*1360 1. The trial court erred in holding that LSA-R.S. 9:3221 prohibited the imposition of liability on the defendants.
2. The trial court erred in holding that the property was owned entirely by the Brady children trusts at the time of petitioner's injury.

OWNERSHIP OF THE TRUST PROPERTY
Petitioners contend that, at the time of Johnny Pellegrin's injury, William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, Pat Brady and Kate C. Brady owned a twenty-five percent (25%) interest in the leased premises and that John J. Erny, Jr., as Trustee for the Brady children trusts, owned a seventy-five percent (75%) interest in the leased premises. Petitioners reason that, in the 1978 sale of the property to the Brady children trusts, William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady transferred 50% of their interest in the Trust property. Thereafter, in 1979, they again transferred 50% of their interest in the Trust property to the Brady children trusts. Therefore, petitioners reason that, at the time of Johnny Pellegrin's injury, the Brady children trusts owned an undivided seventy-five (75%) percent interest in the Trust property and the remaining twenty-five (25%) percent interest in the Trust property was owned by William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady.
The trial court determined that, at the time of petitioner's injuries, the Brady children trusts owned 100% of the Trust property. We agree.
LSA-C.C. art. 1848 states that parol evidence is not admitted against or beyond what is contained in the acts. Under LSA-C.C. art. 1848, testimonial and other evidence may not be admitted to negate or vary the terms of an authentic act. Ordinarily, when the words to a contract are clear, explicit, and lead to no absurd consequences, the meaning and the intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. Gulf American Industries v. Airco Industrial Gases, 573 So.2d 481, 486 (La.App. 5th Cir.1990). Nevertheless, this type of evidence may be admitted to reform an instrument to show the true intent of the parties and to correct mistakes or errors in the written instruments when such instruments, as written, do not express the true agreement of the parties. Succession of LeBlanc, 577 So.2d 105, 107 (La.App. 4th Cir.1991); Gulf American Industries v. Airco Industrial Gases, 573 So.2d at 487; Harris v. Baird, 546 So.2d 497, 500 (La.App. 4th Cir.), writ denied, 551 So.2d 1325 (La.1989).
The primary criteria for the reformation of an instrument by parol evidence is that there must be clear proof of the antecedent agreement as well as an error in committing it to writing. The error or mistake must be mutual, and the burden is on the one seeking reformation to prove the alleged error by clear and convincing evidence. Pat S. Todd Oil Company, Inc. v. Wall, 581 So.2d 333, 336 (La.App. 3rd Cir.), writ denied, 585 So.2d 569 (La.1991).
An instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument or who have relied on the public records. Craftsmen Homes, Inc. v. Hollywood Door Company, Inc., 583 So.2d 879, 883 (La.App. 1st Cir.1991); First State Bank & Trust Company of East Baton Rouge Parish v. Seven Gables, Inc., 501 So.2d 280, 289 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (La.1987). See also Morrison v. D & L Partnership, 499 So.2d 988, 990 (La.App. 3rd Cir.1986). In other words, a third party taking rights on the faith of the public records is protected and cannot be held to provisions which might be contained in a document after it is reformed for simple error. Morrison v. D & L Partnership, 499 So.2d at 990.
Therefore, we must determine whether parol evidence is admissible to reform the act of cash sale and whether the evidence presented established that the intention of the parties was other than that which was reflected in the document.
*1361 A. REFORMATION OF CASH SALE.
In the instant case, the documentary evidence revealed that, in 1978, when William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady executed an act of sale with the trustee, which transferred 50% of their interest in the Trust property to the Brady children trusts for $49,500.00. In 1979, when William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady executed the second act of sale with the trustee, the parties transferred 50% of their interest in the Trust property to the Brady children trusts for $49,500.00. However, it appears that an error may have been committed in that rather than transferring their remaining 50% interest in the Trust property, William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady transferred only 50% of their remaining 50% interest in the Trust property. As a result, the written document may not have expressed the actual intention of the parties.
The parol evidence admitted at trial revealed that the intent of William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady in executing the two acts of sale for the same consideration was to transfer the entire interest they had in the Trust property to the trusts.
James Patrick Brady testified that when he, his wife, and his brother and sister and their spouses transferred the Trust property to the trusts in 1978 and 1979, it was their intent to transfer all of their interest in the Trust property to the trusts and they did not intend to retain any interest in the property whatsoever.
John J. Erny, Jr., formerly the trustee and presently a district court judge, testified that the two transactions in 1978 and 1979, respectively, were intended to transfer all of the interest which William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady had in the Trust property to the trusts. The transfer was handled in this manner so that William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara C. Brady, and Pat Brady and Kate C. Brady could avoid the tax consequences of the income from the Trust property. Judge Erny testified that, during his tenure as trustee, all of the income from the property went into the trusts and that the trusts had always been managed as though the property was entirely owned by the trusts. According to Judge Erny, the trusts also paid 100% of the taxes on the Trust property.
Henry Lafont, Jr., who became the trustee after Judge Erny was elected to the district court bench, testified that any and all revenue collected from the Trust property went directly into the trusts. Moreover, the trusts paid 100% of the taxes on the Trust property.
The uncontradicted evidence presented at trial reveals that the parties intended to transfer 100% of the property to the trusts in the 1978 and 1979 cash sales. After carefully reviewing the entire record, we cannot say that the trial court erred in determining that, at the time of petitioner's injury, the Brady children trusts owned 100% of the Trust property.
Having determined that parol evidence was admissible to reform the act of cash sale and that the evidence presented established that the intention of the parties was other than that which was reflected in the document, we must determine whether petitioners were third parties within the contemplation of the public records doctrine.
B. PUBLIC RECORDS DOCTRINE.
The public records doctrine is embodied in LSA-C.C. art. 1839,[4] LSA-R.S. *1362 9:2721[5] and 2756,[6] and the jurisprudence. Cf. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909) and its progeny. The purpose of this doctrine is to insure the stability of titles to land. Camel v. Waller, 526 So.2d 1086, 1089 (La.1988); Craftsmen Homes, Inc. v. Hollywood Door Company, Inc., 583 So.2d at 882. Moreover, LSA-R.S. 9:2722 clearly sets forth the type of "third persons" afforded protection under the public records doctrine. LSA-R.S. 9:2722 provides as follows:
Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee, grantee or vendee of servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property. (emphasis added).
Having a tort claim against a property owner does not give one an interest in property within the contemplation of the public records doctrine. In the instant case, petitioners, who are alleged tort victims, are not third parties entitled to rely on the public records, and they are not prejudiced by the reformation of the act of cash sale because of error.[7]

LIABILITY
Petitioners contend that the trial court erred in finding that LSA-R.S. 9:3221 prohibited the imposition of liability on the defendants in the instant case.
LSA-R.S. 9:3221 permits a building owner to contract out of responsibility imposed by LSA-C.C. arts. 2317 and 2322 and to allow the lessee to assume responsibility. LSA-R.S. 9:3221 provides as follows:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
In the instant case, it is undisputed that the lease between the Brady children trusts and Sola contained a clause in which the lessee assumed responsibility for the condition of the leased premises during the term of the lease and agreed to exonerate the trusts from all responsibility because of any defect or vice in the leased premises and buildings. In fact, the lease provision made specific reference to LSA-R.S. 9:3221. Therefore, because Sola assumed responsibility for the condition of the leased premises, pursuant to LSA-R.S. 9:3221, the trusts are not liable for petitioner's injuries unless it knew or should have known of the defect and failed to remedy it within a reasonable time.
Therefore, in order to recover from the owner of the property, the Brady children trusts, petitioners must prove: that they sustained damages; that there was a *1363 defect in the defendant's property; that the defendant knew or should have known of this defect; and that defendant thereafter failed to remedy the defect within a reasonable time. Robert v. Espinosa, 576 So.2d 555, 557 (La.App. 4th Cir.), writ denied, 578 So.2d 139 (La.1991).
In the instant case, it was not seriously contested that petitioner sustained damages as a result of his fall through the porch railing on the leased premises. Moreover, the trial judge determined that the railing was defective, and defendants did not appeal this determination. Therefore, the only remaining issues before us are whether the defendant knew or should have known of the defect and, assuming that he had such knowledge, whether he failed to remedy the defect within a reasonable time.
The evidence at trial revealed that neither trustee had any knowledge of the defective condition of the leased premises. According to Judge Erny, during the terms of the lease with Sola, which commenced on January 1, 1988, the trusts were not called upon to make any repairs.[8] As trustee, he was never given any warning or notice of any defect in the leased premises, nor was he asked to correct any alleged defect. Lafont testified that, after he became the trustee in December of 1989 or January of 1990, the only defect of which he was advised was the defect involved in the instant suit and that he became aware of that defect only after the institution of the suit by petitioners.
Moreover, the trial judge could not say that the trustee should have known of the defective railing. The trial judge noted that the defect in the railing was not obvious. As he pointed out in his oral reasons for judgment, none of the people who were employed by Sola were aware that the railing presented a problem until petitioner was injured. The annual professional inspection performed on the leased property for insurance purposes failed to reveal that the railing was defective.
Accordingly, the trial judge determined that the defendant owner, the Brady children trusts, could avail itself of the benefits of LSA-R.S. 9:3221. We cannot say that this factual finding is manifestly erroneous.
Petitioners argue that LSA-R.S. 9:3221 should not be applied in the instant case because the lessee, who assumed liability for the defective condition of the leased premises, was petitioner's, Johnny L. Pellegrin, employer. However, there is no limitation in LSA-R.S. 9:3221 which makes it inapplicable to those situations in which the lessee who assumed responsibility for the condition of the leased premises is the employer of the injured tort victim. If the legislature had intended the statute to be inapplicable, such an exception would have been set forth in the statute.

RECORDATION OF LEASE
Petitioners allege that the lease between the Brady children trusts and Sola was not recorded. Petitioners, therefore, reason that the lease provision shifting the responsibility for defective condition of the leased premises from the owner-lessor to the lessee should not affect their rights.
LSA-C.C. art. 2683 provides that a lease may be made either by a written or verbal contract. Since a lease may be verbal, there is no requirement that it be recorded to be valid. In Hornsby v. Ray, 327 So.2d 146, 150 (La.App. 3rd Cir.), writs refused, 330 So.2d 293, 319 (La.1976), the original lease was written, but the modification of the lease, which contained the assumption of liability under LSA-R.S. 9:3221, was done orally. The court, in refusing to find the owner of the property liable to the tort victim, determined that the assumption of liability could be done orally or in writing, citing Phillips v. Cohen, 183 So.2d 473 (La.App. 4th Cir.), writ refused, 249 La. 196, 186 So.2d 158 (1966).
In the instant case, the lease between the Brady children trusts and Sola was in writing and contained an assumption of liability under LSA-R.S. 9:3221 by Sola. Although the lease was not recorded, the lease was valid and effective as between the parties. Moreover, the failure to record the lease does not *1364 present a public records doctrine issue in this context. As we noted earlier, petitioners, who are alleged tort victims, are not "third persons" within the context of the public records doctrine.[9]

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Petitioners are cast for all costs of the appeal.
AFFIRMED.
NOTES
[1] Henry J. Lafont replaced John J. Erny, Jr. as the trustee of the Brady children trusts in December of 1989 or January of 1990.
[2] Pursuant to a motion to dismiss, dated June 1, 1990, petitioners voluntarily dismissed, without prejudice, their suit against the individual Brady children.
[3] Travelers did not appeal the dismissal of its petition of intervention, nor did Travelers answer the appeal.
[4] LSA-C.C. art. 1839 provides as follows:

A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.
[5] At all times pertinent hereto, LSA-R.S. 9:2721 provided as follows:

No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease, or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
[6] LSA-R.S. 9:2756 provides as follows:

All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.
[7] If petitioners had purchased an undivided one-fourth interest in the property from William H. Ditto and Tanya B. Ditto, John A. Brady, Jr. and Clara Brady, and Pat Brady, and Kate C. Brady, we could very likely have a different result.
[8] Judge Erny testified that the only condition of which he was aware was a leaky roof.
[9] If petitioners had acquired the Trust property from the Brady children trusts, the public records doctrine would have required that the lease be recorded to affect them.