931 So.2d 1150 (2006)
Succession of Connie C. GORE.
No. 2005-CA-0549, 2005-CA-0806.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 2006.
*1151 Stephen K. Conroy, Deborah G. Marx, Christine W. Marks, Conroy Law Firm, PLC, Metairie, Counsel for Mid-South Estate Planning, L.L.C., Robert Tanner, Ron Hampton, Dixie Ramirez, Marty Roth, Adrian Leblanc and Jennifer Simon.
Mark G. Tauzier, William E. Wright, Jr., Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, Counsel for James E. LaPorte, as Executor for the Succession of Clark A. Newal and Westport Insurance Company as Insurer of Clark A. Neal.
Paul A. Tabary, III, Dysart & Tabary, L.L.P., Ewell C. Potts, III, Potts & Potts, Metairie, Counsel for Jeffrey Hipp.
(Court composed of Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO Jr., Judge ROLAND L. BELSOME).
TERRI F. LOVE, Judge.
Mid-South Estate Planning, L.L.C. and James E. LaPorte appeal the trial court's determination that the Connie C. Gore Trust and the Trust amendment were invalid as to form and that Connie C. Gore did not expressly mandate the inter vivos donations to the Trust. For the reasons stated below, we affirm the ruling of the trial court.

FACTS AND PROCEDURAL HISTORY
The instant litigation arises out of the Succession of Connie C. Gore ("Ms.Gore"), who died on March 14, 2003. Ms. Gore is the mother of Hazel Lansou ("Ms.Lansou") and a predeceased daughter, Helen Hipp ("Ms.Hipp"). Ms. Gore is the grandmother of Ms. Lansou's children, David Lansou, Jr., Cynthia L. Janusa, Brian E. Lansou, Sr., Deborah L. Griffin, and Ms. Hipp's son, Jeffrey Hipp ("Jeffrey").
On or about March 22, 1996, Ms. Gore executed a general power of attorney that appointed Ms. Lansou as her agent and attorney-in-fact, which read as follows:
BEFORE ME, the undersigned authority duly qualified in the State and Parish aforesaid, personally came and *1152 appeared Connie Gore SS# ... DOB July 2, 1906, who after being sworn declared:
That I, Connie Gore, being of full age and a resident of the Parish of St. Bernard do hereby appoint Hazel Lansou, SS# ... DOB December 30, 1924, to represent me and to have the general and specific power of attorney to represent and act on my behalf regarding all and every act, matter and thing whatsoever, as shall or may be requisite and necessary, touching or concerning the affairs, business or assets of appearer as fully, completely and effectively, and to all intents and purposes with the same validity, as if all and every such act, matter or thing, were or for, or as appearer could or might do if personally present; also with full power of substitution and revocation; appearer hereby agrees to ratify and confirm all and whatsoever the said agent shall lawfully do or cause to be done by virtue of this act of procuration.
I, Hazel Lansou, appear herein to formally accept this power of attorney granted unto me by Connie Gore.
Thus done and signed in the presence of the undersigned witnesses and Notary Public on this 22nd day of March, 1996 at Chalmette, LA.
On or about March 10, 2001, Mid-South Estate Planning, L.L.C. ("Mid-South") through Clark A Neal,[1] (hereinafter referred to as Mr. LaPorte), who had an arrangement with Mid-South to provide limited services, prepared the Connie C. Gore Revocable Living Trust ("Trust"), a Last Will and Testament ("Testament"), a Living Will Declaration, Power of Attorney, and a Healthcare Power of Attorney.
The Testament and the Trust were drafted with a signature line to be signed by Hazel Lansou as the agent and attorney-in-fact for Connie C. Gore. On March 10, 2001, Hazel Lansou executed the documents. The signature block read as follows:
 ___________________________
 CONNIE C. GORE, Testatrix
 BY: HAZEL G. LANSOU
 Agent & Attorney-in-Fact
The Trust named Ms. Gore as the settler and Ms. Lansou as the original trustee. Thus, Ms. Lansou signed the document as trustee and for Ms. Gore, as her agent. The Trust divided Ms. Gore's interest equally between her daughters, Ms. Lansou and Ms. Hipp.
Ms. Hipp, one of Ms. Gore's daughters, died on November 15, 2002. On December 4, 2002, Mid-South drafted an amendment to the Trust. Ms. Lansou stated that she executed this amendment to reflect her mother's intent to provide for her grandchildren equally after Ms. Hipp's untimely death. The original Trust would have given Ms. Hipp's son fifty percent of the estate through representation. Thus, the amendment provided that Ms. Lansou would inherit one-fourth of the estate and divide the remaining three-fourths equally between the five grandchildren, Ms. Lansou's four children and Ms. Hipp's son, Jeffrey. Ms. Gore was not present when Ms. Lansou signed the amendment. Ms. Lansou signed the amendment as the trustee and not as the agent of Ms. Gore.
Ms. Gore died on March 14, 2003. On December 9, 2003, Ms. Lansou filed a petition *1153 of possession. Ms. Lansou distributed the assets in accordance with the amended trust. However, Jeffrey expressed concerns over the amended distributions; consequently, Ms. Lansou agreed to pay him fifty percent of her mother's estate.[2]
On April 27, 2004, Ms. Lansou and her four children filed for a declaration of rights pursuant to a purported invalid testament. Ms. Lansou's four children then filed a petition for damages against Mid-South and Mr. LaPorte, as executor of Mr. Neal's succession, alleging negligence and the invalidity of the Testament, the Trust, and the amendment. The trial court in the damages matter refused to consider the suit until the documents were adjudged invalid.
Hence, Ms. Lansou, David Lansou, Brian Lansou, Sr., Cynthia Janusa, Deborah Griffin, and Jeffrey filed a motion for summary judgment seeking a judicial determination that the Testament, the Trust, and the amendment, along with the donations to the trust were invalid under the laws of the State of Louisiana. Mid-South filed a motion for summary judgment seeking to have the Testament, the Trust, amendments, as well as the donations to the trust declared valid. Mr. LaPorte filed a cross-motion for summary judgment adopting Mid-South's position except anything regarding the Trust amendment because Mr. Neal died prior to its execution.
After a hearing on the matter, the trial court held that "the Trust is invalid as to form and the donations were not expressly mandated by Connie Gore." The court further found:
The Trust in this case was signed not by the settler, Connie C. Gore, but by Hazel G. Lansou as Agent and Attorney-in-fact for Connie C. Gore. Since authority must be given expressly to make an inter vivos donation, either outright or to a new or existing trust, the trust is only valid if Connie C. Gore gave Hazel Lansou express authority to make inter vivos donations. Therefore, the power of attorney at issue must expressly authorize Hazel Lansou to donate Ms. Gore's interest for the donation to be valid. The "General Power of Attorney" signed on March 22, 1996 is a standard power of attorney mandate written in very general terms. The "General Power of Attorney" does not expressly state that the mandatory [sic] may make inter vivos donations. In fact, the document does not mention donations at all. Accordingly, this court finds the "General Power of Attorney" did not confer the power to make inter vivos donations on behalf of Ms. Gore to Ms. Lansou.
Mid-South argues that although the mandate does not expressly authorize inter vivos donations, Ms. Gore verbally gave mandatory [sic] authority to Ms. Lansou to make inter vivos donations. Although the contract of mandate is not required to be in any particular form, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form. Since an inter vivos trust may be created only by authentic act, the mandate authorizing the mandatary to make an inter vivos donation must be made by authentic act. Therefore, Ms. Gore could not verbally express authority to Ms. Lansou to make inter vivos donations.

STANDARD OF REVIEW
Summary judgments are reviewed de novo on appeal whereby the appellate court asks the same questions as the trial court in determining whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact *1154 and whether the movant is entitled to judgment as a mater of law. Marcades v. Cleanerama, Inc., 02-0357, p. 3 (La.App. 4 Cir. 9/25/02); 831 So.2d 288, 289.
The burden of proof in a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial, then the movant's burden only requires her to point out the absence of factual support for one or more of the essential elements. Thereafter, if the adverse party falls to produce factual support sufficient to establish that he will be able to satisfy his burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C).

ASSIGNMENT OF ERROR
Mid-South and Mr. LaPorte aver the trial court erred in granting the motion for summary judgment of the Lansou family, including Jeffrey.

POWER OF ATTORNEY AND MANDATE
First, Mid-South asserts "Mrs. Lansou possessed specific authority to execute the Trust, make donations to the Trust, and amend the Trust." In support of this argument, Mid-South offers the power of attorney as evidence of Ms. Gore's desire to have her daughter handle her affairs and the deposition testimony of Ms. Lansou, Deborah Griffin, and David Lansou. In her deposition, Ms. Lansou stated that Ms. Gore was present when Mid-South created the power of attorney. Deborah Griffin, Ms. Lansou's daughter, testified that her grandmother, Ms. Gore desired to have a trust created for tax purposes. David Lansou, Ms. Lansou's son, testified that he explained to Ms. Gore that the Trust did not have anything to do with taxes and she understood that she was creating a living trust. Both of the grandchildren testified that Ms. Gore did not discuss the specific distribution details of the Trust with them.
Second, Mid-South argues that the power of attorney empowered Ms. Lansou as the mandatary with authority to execute the trust.
The Louisiana Trust Code governs the creation of trusts and provides "[a]n inter vivos trust may be created only by authentic act or by act under private signature executed in the presence of two witnesses and duly acknowledged by the settlor or by the affidavit of one of the attesting witnesses." La. R.S. 9:1752. The settlor is the person who creates the trust. La. R.S. 9:1761. A person having capacity to contract by onerous or gratuitous title may be a settlor of an onerous or gratuitous inter vivos trust, respectively. La. R.S. 9:1763.
La. C.C. art. 2989 states, "[a] mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. C.C. art. 2997 explains, in pertinent part:
Authority also must be given expressly to: 1) Make an inter vivos donation, either outright, or to a new or existing trust or other custodial arrangement, and, when also expressly so provided, to impose such conditions on the donation, including, without limitation, the power to revoke, that are not contrary to the other express terms of the mandate.
La. C.C. art. 2996 also requires that "the authority to alienate, acquire, encumber, or lease a thing must be given expressly. Neither the property or its location need be specifically described."
In the present case, the signature block for the settlor indicates that it was signed by Connie C. Gore, By: Hazel Lansou, Agent & Attorney-in-Fact and the power of attorney is attached to the Trust. Ms. *1155 Gore did not duly acknowledge the Trust as she did not sign it. The power of attorney failed to grant Ms. Lansou express authority to create the Trust because it lacked express authority for Ms. Lansou to make inter vivos donations. Thus, the Trust did not conform to Louisiana law.
Third, Mid-South argues, "circumstantial evidence may be considered to determine the scope of a power of attorney" and cites Succession of McCrocklin, 242 La. 404, 137 So.2d 274 (1962), in support of its argument. In McCrocklin, Jack McCrocklin, acting under authority of his mother, delivered bonds to Commercial National Bank of Shreveport to be placed in a safe at the bank. On that same date, he advised the bank that his mother desired to make a donation of the bonds to Margaret Virginia Johnson after which the bank would maintain possession of the bonds for Ms. Johnson. The bank then issued a receipt for the bonds on a deposit slip in the names of Ms. Johnson and her mother. Ms. Johnson and her mother later acknowledged, in writing, receipt of the bonds. After the death of Ms. McCrocklin, two heirs sought an amendment to her inventory to include the bonds. The administrator answered alleging the bonds had been donated to Ms. Johnson and were not owned by Ms. McCrocklin at the time of her death. The heirs argued that the bonds were incorporeal movables and were not susceptible to donation inter vivos by manual delivery and could only be donated by notarial act. The court held that under the law of negotiable instruments the bonds were negotiated "merely by delivery" and Mr. McCrocklin, her son, had a power of attorney. Thus, he was authorized to make delivery of the bonds as a donation to Ms. Johnson and there was a receipt to both Ms. Johnson and Ms. McCrocklin. McCrocklin is distinguishable from the case at hand because Mrs. Johnson and her mother both acknowledged receipt of the bonds and the delivery of the bonds were in conformity with the law of negotiable instruments. In the present case, none of the contested documents conform to the aforementioned formalities and prescribed laws.
Fourth, Mid-South argues that the trial court improperly relied on Succession of Aucoin, 99-2171 (La.App. 1 Cir 11/8/00); 771 So.2d 286, and Succession of Tebo, 358 So.2d 337 (La.App. 4 Cir.1978), in its reasons for judgment. Specifically, Mid-South asserts "the lower court's opinion confuses the appropriate issue by implying that the scope of a mandate somehow determined whether or not it is in authentic form. The court implies that express authority cannot be found outside the corners of a legitimate mandate in authentic form." In Aucoin, the court held that a power of attorney "which does not expressly and explicitly confer upon the agent the power to donate the principal's interest in immovable property, did not authorize" a donation of a family home. Aucoin, 99-2171, p. 5, 771 So.2d at 288. We find that the trial court was correct in its analysis of the law and Aucoin. In the case sub judice, the power of attorney was written in general terms and did not expressly authorize the mandatary to make inter vivos donations as required by law.

RATIFICATION
Alternatively, Mid-South argues, "[i]f Mrs. Gore did not grant her daughter the specific authority to execute, amend, and make donations to the trust, she clearly ratified her daughter's actions." The Louisiana Trust Code provides that the provisions "shall be accorded a liberal construction in favor of disposition," but that "if the Code is silent" the courts should look to the Civil Code for proper interpretation. La. R.S. 9:1724. The Trust Code *1156 is silent as to the possibility of the ratification of a trust, amendments, or inter vivos donations to the trust. However, the Louisiana Civil Code provides for express or tacit ratification. La. C.C. art. 1843. La. C.C. art. 1843 states, in pertinent part:
An express act of ratification must evidence the intention to be bound by the ratified obligation.
Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation.
Additionally, a donation inter vivos may be confirmed even if it lacks proper form if the confirmation is made "in the form required for a donation." La. C.C. art. 1845. A mandatary must also have express authority to make donations inter vivos, to a trust or otherwise. La. C.C. art. 2997.
First, the record is devoid of evidence of express or tacit ratification. Ms. Lansou and two of her children testified that Ms. Gore intended to execute the Trust and make the donations to the Trust. However, this testimony is not express and does not confirm the intent of the settler of the Trust, Ms. Gore. Tacit ratification does not exist because Ms. Gore never directly accepted a benefit from Ms. Lansou's executing or amending the Trust or from the donations inter vivos. Second, Ms. Lansou was never authorized to execute the amendment to the Trust when she signed as trustee because the Trust instrument explicitly provides that Ms. Gore has sole authority to amend the Trust. Third, Ms. Gore never confirmed the donations inter vivos that lacked valid form because she never acknowledged the donations in the proper form required by Louisiana law.
Therefore, based on the Louisiana Trust Code and the Louisiana Civil Code, we find this argument has no basis in law.

REFORMATION
Finally, Mid-South asserts the power of attorney should be reformed to reflect Ms. Gore's intentions as stated by Ms. Lansou and two of her children in their depositions. "A written instrument may be reformed . . . to correct an error or mistake in the contract" to make the instrument accurate. First State Bank & Trust Co. v. Seven Gables, Inc., 501 So.2d 280, 285 (La.App. 1 Cir.1986). However, "clear proof" is required to reform an instrument. Pellegrin v. Ditto, 625 So.2d 1356, 1360 (La.App. 1 Cir.1993); First State Bank, 501 So.2d at 285. Parol evidence may be admitted to demonstrate this proof. Pellegrin, 625 So.2d at 1360. However, the Civil Code provides that the "capacity to donate inter vivos must exist at the time" the donation is made. La. C.C. art. 1471. Additionally, express authority must be given to "make an inter vivos donation, either outright or to a new or existing trust." La. C.C. art. 2997.
No parol evidence exists in the record to support the clear proof required for reformation of a document. Ms. Gore granted Ms. Lansou a general power of attorney and never ratified Ms. Lansou's actions, which were invalid under Louisiana law. The general power of attorney did not grant Ms. Lansou the capacity to make inter vivos donations, and, by interpreting the Louisiana Civil Code, this capacity cannot be granted retroactively.
Therefore, based on the Civil Code and jurisprudence, we find this argument has no basis in law.

DECREE
For abovementioned reasons, we affirm the judgment of the trial court granting summary judgment in favor of plaintiffs and finding that no genuine issue of material fact exists that the Last Will and Testament, the Connie C. Gore Trust, and *1157 the Trust amendment were invalid as to form and that Connie C. Gore did not expressly mandate the donations.
AFFIRMED
NOTES
[1] Clark Neal died on April 22, 2001, prior to Ms. Lansou executing the amendment to the Trust. James E. LaPorte was appointed executor of the Succession of Clark A. Neal and has been named as a party in his capacity as Executor. An uncontested motion to consolidate the Lansou and LaPorte appeals was granted on July 19, 2005.
[2] The details of this payment are not in the record.