653 So.2d 1254 (1995)
Jack Edward LEWIS, Sr., Plaintiff-Appellee
v.
Roy SAUCER, d/b/a Roy's Pawn Shop, Defendant-Appellant.
No. 26685-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
*1255 Arbour & Aycock by Larry Arbour, West Monroe, for appellant.
Arnold, Pettway, Dixon & Collier by Joe H. Dixon, Jr., Monroe, for appellee.
Before NORRIS and BROWN, JJ., and PRICE, J. Pro Tem.
NORRIS, Judge.
The plaintiff, Jack Edward Lewis Sr., sued an adjacent landowner, Roy Saucer, for injunctive relief and damages, regarding the ownership of a parking lot situated between their respective buildings. A temporary restraining order issued, prohibiting Saucer *1256 from building on the disputed property; this later lapsed. After a bench trial, the district court rendered judgment declaring Lewis the owner of the parking lot and ordered Saucer to remove all improvements on it. Saucer now appeals, urging the district court erred in reforming his property description without regard to the public records doctrine. For the reasons expressed, we reverse and render.

Factual background
Lewis and Saucer currently own Lots 2 and 3, Square 1, Resubdivision of Parnell and Hodge in West Monroe, located at the corner of Cypress and Morris Streets. Prior to 1980, the entire tract was owned by Horace Eyre.[1] He had built two adjacent buildings, which roughly form a square "U"; the parking lot in question is situated between the two buildings and faces only Morris Street. Mr. Eyre used the rear building, which also faces Morris Street, as an automotive machine shop called Eyre Motor Service. Since 1967, he had leased the front building, facing Cypress Street, to Richard Campbell, who ran a paint and art supply shop. Included in the lease was the paint shop and a warehouse, whose bay door opens onto the parking lot. This lease includes the parking lot.[2] The attached map represents the general layout; the parking lot at issue is marked by diagonal lines.

*1257 According to Mr. Eyre's son, Steven, and to Lewis, both businesses used the parking lot in question. The machine shop often parked disabled cars there while their engines were under repair. Campbell regularly used it to accept deliveries from large trucks to his warehouse; he also had a portable building on part of the lot next to his shop.
In 1980, after some negotiations, Mr. Eyre decided to sell Campbell the portion of the property he had rented for so many years. He hired a surveyor, L.S. Pritchard, in effect to subdivide the land. Pritchard, however, testified that he made an error in his survey. The error is reproduced in the description in the cash deed from Eyre (Engine Specialties Inc.) to Campbell. It reads as follows:
A certain lot or parcel of land containing 7243.5 sq. ft., more or less, situated in a portion of Lot 2 and 3, Block 1, Parnell and Hodge 1st and 2nd Addition to West Monroe, La. and being more particularly described as BEGINNING at the Southwest corner or said Lot 3 of Block 1, said point lying at the intersection of the Easterly line of Cypress St. and the Northerly line of Morris St.; thence Northeasterly along the Northerly line of Morris Street and the Southerly line of Lot 3, a distance of 64.24 ft.; thence turning a deflection angle of 83° 33'40" left, continue Northwesterly along the Westerly fare [sic; should be "face"] of Frame Bldg. and its Southerly projection a distance of 52.45 ft.; thence turning a deflection angle of 90° 00' right, continue Northeasterly along a party-wall in said Bldg. a distance of 9.57 feet; thence turning a deflection angle of 90° 42'30" left, continue Northwesterly along a party-wall in said Bldg. and its Northerly projection a distance of 51.21 ft. to the Northerly line of said Lot 2 of Block 1; thence turning a deflection angle of 95° 43'50" left, continue Southwesterly along the Northerly line of said Lot 2, a distance of 77.58 ft. to the Easterly line of Cypress St.; thence turning a deflection angle of 85°59' left, continue Southeasterly along the Easterly line of Cypress St. a distance of 102.25 ft. to the POINT OF BEGINNING. (emphasis added)
Following this description's first distance call of 64.24 feet, the eastern border of the conveyed property actually runs through the middle of the parking lot and the middle of the warehouse, the latter of which both sides concede was totally conveyed to Campbell. However, if the first call were about 25 feet longer, the eastern border would almost precisely coincide with the structures described ("Westerly fare [sic] of Frame Bldg." and "party-wall in said Bldg.") and would obviously convey the parking lot to Campbell. At the time, however, no one noticed the error, and Campbell and Eyre Motor Service continued to share the parking lot.
Later, in April 1984, Mr. Eyre sold the northern portion of the property with the machine shop to its current owner, plaintiff Jack Lewis. The cash deed conveys the entirety of Lots 2 and 3 to Lewis, less and except the portion previously sold to Campbell. The property description from Campbell's deed is copied verbatim in Lewis's deed as the less and except. Still, nobody noticed the error; Campbell and the machine shop's new management continued to share the parking lot.
Later, in July 1987, Campbell sold his part of the property to its current owner, defendant Roy Saucer. The property description in this deed is copied verbatim from Campbell's deed. Saucer uses the building and warehouse as a pawn shop. Initially he and the machine shop continued sharing the parking lot. In February 1989, however, Saucer erected a metal frame over the parking lot, apparently intending to enclose it.

Procedural history
Lewis filed the instant suit in March 1989, alleging he owned the parking lot. He prayed for an injunction against further construction, removal of the existing structures, and special and general damages. A TRO issued, but at the initial hearing Lewis withdrew his request for injunctive relief and the court referred the damage claim to the merits. By his answer, Saucer asserted he owned the parking lot. Neither side has contested the ownership of the buildings; the only issue is the parking lot.
*1258 At trial in May 1991, Lewis testified that when Horace Eyre sold him the machine shop, he clearly indicated that the parking lot went with it. Horace Eyre was too old and feeble to testify, but his son, Steven Eyre, testified that at the time of the sale to Lewis it was his parents' intention to convey the parking lot with the machine shop. Charlie Gross, an officer of Engine Specialties Inc., testified that Horace Eyre did not intend to convey the parking lot to Campbell in 1980. The evidence suggested that Horace Eyre was inattentive to legal descriptions.[3]
Saucer testified that when he bought the paint shop from Campbell in 1987, Campbell told him the parking lot went with his parcel. Saucer also testified that he heard his surveyor, Mason, tell Lewis in 1989 that the party walls were the boundary between the properties; acknowledging this, Lewis replied he did not care who owned the parking lot, as long as there was no shed on it. (Mason verified this, adding that when he spotted the mistake, he spoke to Horace Eyre, who said the parking lot went with Campbell's property.) Richard Campbell did not testify, although Saucer had previously listed him as a witness.
Saucer's surveyor, Lawson Mason, testified that the boundary line as described in all three acts of conveyance cuts directly across the parking lot and the warehouse. He testified, however, that by accepted surveying standards, "artificial monuments" (buildings and other manmade structures) take precedence over calls and directions in legal descriptions. By following the references to the "frame building" and the "party-walls," Mason concluded that all deeds starting in 1980 actually kept the parking lot with the paint shop and warehouse.
Lewis's expert surveyor, James McCoy, verified that the described boundary line cut through the parking lot and warehouse. He also admitted, reluctantly, that artificial monuments should govern over distance calls. However, he refused to follow these deeds' monument calls because he thought the machine shop was a masonry building, not frame.[4] He hypothesized that the line should actually run along Saucer's north wall, leaving the parking lot to Lewis.
The remaining expert, L.S. Pritchard, testified by deposition that he made an error by placing the Point of Beginning at the centerline of Cypress Street instead of at the edge of the right-of-way. He says clearly that the 64.24-foot line should have been 25 feet longer, and this would give the entire parking lot to Campbell (and his vendee, Saucer). Pritchard could not, however, remember being instructed by Mr. Eyre exactly where to place the boundary line.
In reasons for judgment, the district court summarized the evidence, except for Mr. Pritchard's deposition, which is not mentioned. In light of the admitted error of description, the court cited La.C.C. art. 2045, "Interpretation of a contract is the determination of the common intent of the parties." It further reasoned that reformation of instruments is available to correct mistakes that do not express the parties' true intent. The court then cited one passage from First State Bank & Trust v. Seven Gables Inc., 501 So.2d 280 (La.App. 1st Cir.1986), writ denied 502 So.2d 103 (La.1987), for the rule that a written instruments may be reformed "against the original parties and their privies" to correct an error. Without stating that Saucer was never a party to any conveyance from Eyre, or that he was a third party purchaser entitled to rely on the public records, the court weighed the credibility of the various witnesses. It concluded that Horace Eyre must have intended to keep, and Richard Campbell intended not to buy, the parking lot in 1980; and that Eyre intended to sell it instead to Lewis, who intended to buy it. The court therefore declared Lewis the owner of the disputed property and, under *1259 La.C.C. art. 670, ordered Saucer to tear down his improvements on the parking lot.[5] The court then discussed and dismissed Lewis's various claims for damages. Finally, it assessed Lewis's surveyor's fee as cost. Saucer took the instant appeal.[6] Lewis has neither appealed nor answered the appeal.

Applicable law
Reformation of instruments is an equitable remedy which lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. Pipes v. Pipes, 343 So.2d 329 (La.App.2d Cir.), writ denied 345 So.2d 904 (La.1977), citing Merritt v. Hays, 237 La. 557, 111 So.2d 771 (1959). It is a personal action, even when applied to real estate, in which the burden is on the person seeking reformation to establish the mutual error or mistake by clear and convincing proof, parol evidence being admissible for this purpose. Id. Since the action is personal, a written instrument may be reformed so as to make it express truly and correctly the intention of the parties, provided the rights of third parties have not intervened. Reynaud v. Bullock, 195 La. 86, 196 So. 29 (1940); Pellegrin v. Ditto, 625 So.2d 1356 (La.App. 1st Cir.1993). An instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument, or who have relied on the public records. Reynaud v. Bullock, supra.
In determining the true boundary line, the designation of visible objects, such as artificial monuments, must control over the alleged measure of invisible lines, which were erroneously stated by a careless surveyor. Riddell v. Jackson, 14 La.Ann. 135 (1859); Nunez v. Nunez, 423 So.2d 1270 (La. App. 4th Cir.1982), and citations therein. Even if the calls in the deed are erroneous, a good faith purchaser who buys in accordance with fixed boundaries stated on the deed is entitled to the land within those fixed boundaries. Hunter v. Forrest, 183 La. 434, 164 So. 163 (1935).

Discussion
By his first and sixth assignments of error, Saucer urges the district court erred in declaring Lewis, not Saucer, the owner of the contested parking lot. Specifically, he argues that as a good faith third party purchaser and not Horace Eyre's original vendee, Saucer was entitled to rely on the property description on public record; that the parol evidence accepted by the court was not clear and convincing, such as would justify reforming Saucer's deed; and that in interpreting his deed, the court erred in not following the artificial monuments named in the description.
Lewis urges in brief that the district court properly evaluated the parol evidence to determine the true intent of Horace Eyre in selling the two parts of his tract, and that this conclusion is not manifestly erroneous. He further argues that Saucer's failure to produce Richard Campbell as a witness created the inference that Campbell would have testified that he knew from the beginning that the parking lot stayed with the machine shop, and so informed Saucer in 1987. Mitchell v. Clark, 448 So.2d 681 (La.1984).
The effect of the district court's judgment is to reform the property description in Campbell's deed (a party neither to any sale with Lewis nor to this litigation) and in Saucer's deed (a good faith third party purchaser relying on public records) to exclude the parking lot. This, however, is not permitted. Lewis cannot reform those deeds to which he was not a party or a privy; similarly, he can no longer reform his deed from Eyre because the rights of Campbell and Saucer have intervened. Horace Eyre could have reformed his act of sale to Richard Campbell if there was an erroneous description, but neither Eyre nor Campbell is still a party in interest or involved in this suit.
*1260 In reaching its conclusion, the district court relied on language from First State Bank &Trust v. Seven Gables, supra, stating that "A written instrument may be reformed against the original parties and their privies to correct an error or mistake in the contract, so as to make it accurately express the true intent and agreement of the parties" (emphasis added). 501 So.2d at 285. In brief, Lewis continues to urge that this case supports the judgment. We are constrained to note, however, that Seven Gables involved neither the reformation of real estate descriptions nor the interests of third party purchasers. We also observe that of all the authorities cited by the Seven Gables court in support of this statement, not one contains the reference to "privies."[7] Only two sentences later, the Seven Gables court correctly states, "An instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument, or who have relied on the public records." 501 So.2d at 289. Under the circumstances, we do not consider Seven Gables to be valid authority for deeming Roy Saucer a "privy" to any transaction with Eyre.
In further support, Lewis cites the recent case of M.R. Building Corp. v. Bayou Utilities Inc., 25,759 (La.App. 2d Cir. 5/4/94), 637 So.2d 614. In that case, however, the trial court had explicitly found that the alleged third parties, Bayou Utilities and John Pruett, did not rely on the public records and were not prejudiced by the reformation. Such is simply not the case here. We are therefore constrained to hold that the district court committed legal error in ordering reformation of the property description in Campbell's deed to Saucer.
The court was faced with a case in which the property description, if its calls and directions are honored literally, is wrong because it dissects the parking lot and Saucer's warehousea result that both sides concede is wrong. However, the description also uses artificial monuments whose locations are readily ascertained ("Westerly fare [sic] of Frame Bldg." and "party-wall in said Bldg."). The law is very well settled that in such cases of inconsistency, the references to the monuments prevail. Riddell v. Jackson, supra; Nunez v. Nunez, supra.
In Riddell v. Jackson, the plaintiff and defendant were adjacent landowners whose houses shared a common wall. Nine years after he bought the property, the plaintiff brought a petitory action asserting ownership of the full extent of the lot as described in his deed, which recited a side boundary 134 feet long. The defendant's deed described the corresponding 134-foot line. Both deeds referred to the common wall. A court-ordered survey showed that the 134-foot line of both parties' deeds would actually lie inside the defendant's house, 4½ feet past the party wall. The court stated:
[The] claim of plaintiff cannot be sustained. It is founded upon a plan exhibiting a line, which is admitted on all hands to be erroneous; and it leaves out of view that important part of the description of the thing sold, which concerns the improvements. The titles of the two parties are of equal dignity. * * * The plaintiff acquired a three story brick dwelling house, kitchen and dependencies * * *. The defendant acquired a three story brick dwelling house, kitchens and dependencies * * *.
These designations of visible objects, constituting by far the most valuable part of the thing sold, must control an alleged measure of invisible lines, falsely stated by an incompetent or careless surveyor. 14 La.Ann. at 136.
Physical boundaries are also superior to recitations of area in a deed. In Hunter v. Forrest, supra, the Supreme Court stated:
In the first place, the defendant acquired title to this property in good faith and did not have to look beyond the record. And in the next place, he purchased according to certain definite and fixed *1261 courses and boundaries, and he is entitled to all the land between such boundaries, although it gives him a greater quantity than that called for in his title. 164 So. at 165 (citations omitted).
These principles are dispositive of the instant case. Regardless of the precise distance call of 64.24 feet in his deed, Saucer was entitled to rely on the property description in Campbell's 1980 deed, a matter of public record. According to this, the property begins at the corner of Cypress and Morris Streets, and extends along Morris Street until it reaches the southern extension of the western wall of Eyre's frame building. The description further follows the artificial monuments by using the 9.57-foot and 51.21-foot party walls between the warehouse and Eyre's building. Adherence to this interpretation of the description convinces us that the parking lot is included in the property that Saucer bought from Campbell, and Campbell from Eyre.
Moreover, the testimony of L.S. Pritchard, the surveyor who prepared the 1980 survey for Eyre, gave a cogent explanation of how the error occurred. He testified that he misinterpreted his field surveyor's notes as placing the point of beginning in the center of Cypress Street, instead of at its eastern edge. Adding 25 feet to the first call, he explained, would almost completely correct the description.[8] In short, the only rational interpretation of the description in Saucer's deed is that offered by Saucer's expert, Mr. Mason, and by Eyre's surveyor, Mr. Pritchard. The district court was plainly wrong to reject this analysis. Saucer is the owner of the disputed parking lot.

Conclusion
For the reasons expressed, the judgment of the district court is reversed. Judgment is rendered herein rejecting Jack Edward Lewis Sr.'s demands, and declaring the defendant, Roy Saucer, the owner of the parking area property shown on Trial Exhibit P-3, attached to the district court judgment as Exhibit "J" and incorporated herein by reference. Jack Edward Lewis Sr. is to pay all costs, trial and appellate. La.C.C.P. art. 2164.
REVERSED AND RENDERED.
NOTES
[1] Sometime between 1967 and 1980, Eyre apparently conveyed part of this property to Engine Specialties Inc., a closely-owned family corporation. Engine Specialties was actually Campbell's vendor in 1980. Since Steven Eyre was uncertain whether his father or the corporation held the title at the time, R. p. 72, for the sake of simplicity we will always refer to the vendor as Eyre.
[2] The paint shop and warehouse property are described in Campbell's lease as follows: "A tract of land in Lots Two (2) and Three (3) of the Resubdivision of Parnell & Hodge * * * more particularly described as beginning at the Northwest corner of said Lot Two and running thence easterly along the North line of said Lot Two a distance of 104 feet to a point on the North line of said Lot Two; thence running southerly along a line parallel with the West line of said Lot Two a distance of fifty feet, more or less, to a point on the South line of said Lot Two; thence running westerly along the South line of said Lot Two a distance of 13 feet to a point on the South line of said Lot Two; thence running southerly along a line parallel with the West line of said Lot Three a distance of 52.25 feet, more or less, to a point on the South line of said Lot Three; thence running westerly along the South line of said Lot Three a distance of 91 feet, more or less, to the Southwest corner of said Lot Three; thence running northerly along the West lines of said Lots Three and Two a distance of 102.25 feet, more or less, to the Northwest corner of said Lot Two, the point of beginning mentioned above."
[3] Before he ultimately sold the machine shop, Mr. Eyre in 1983 leased it to Lewis. In the written lease, Exhibit P-12, however, the property description is copied from the 1967 lease to Campbell, Exhibit D-8. As written, this document leased Campbell's property to Eyre Motor Service, an obvious error.
[4] A photograph in evidence, Exhibit D-7, shows that the western face of the machine shop building is mostly frame. A small portion, which juts into Lewis's building and apparently serves as a one-car parking space, appears to be painted cinderblock. This one-car space is not contested.
[5] This article actually states that the court may allow an encroaching building to remain standing, if certain conditions are met (the landowner puts up the building in good faith, and the neighbor does not complain within a reasonable time or does so only after the construction is substantially completed).
[6] Because the appeal is suspensive, Saucer's shed is still in place over the parking lot.
[7] These include: Daigle & Asso. Inc. v. Coleman, 396 So.2d 1270, 1271 (La.1981); Reynaud v. Bullock, supra; Fontenot v. Lewis, 215 So.2d 161, 163 (La.App. 3d Cir.1968); Walker v. Jim Austin Motor Co., 162 So.2d 135, 138 (La.App. 1st Cir.), writ ref'd 246 La. 354, 164 So.2d 353 (1964); Comment, Reformation of Instruments in Louisiana, 30 Tul.L.Rev. 486, 495 (1956).
[8] Mr. Pritchard also admitted that his survey recites an angle of 83° > 33'40" between the north edge of Morris Street and the west wall of the frame building, when in fact it should be an even 90° >. He conceded that this was also a "big error."